STRICKLER v. CITY OF COLORADO SPRINGS.

1. WATER-RIGHTS — PRINCIPLE OF PRIORITY.— The fundamental principle of our system of water-rights is that priority in point of time gives superiority of right among appropriators for like beneficial purposes.

2. APPROPRIATIONS FROM TRIBUTARIES OF MAIN STREAM.— The rights of a prior appropriator from a stream cannot be impaired by subsequent appropriations of water from its tributaries.

3. CHANGING POINT OF DIVERSION.— A prior appropriator of water from a stream may change the point of diversion and the place of use without losing his priority, provided the rights of others are not injuriously affected by such change.

4. SALE OF PRIORITY SEPARATE FROM THE LAND.— A priority to the use of water for irrigation is a property right, and may be sold and transferred separately from the land in connection with which the right ripened.

5. STATUS OF IRRIGATION PRIORITIES ANTEDATING CONSTITUTION.— Rights acquired to the use of water for irrigation, prior to the adoption of our state constitution, cannot be taken by a city for the domestic use of its inhabitants, without compensation.

6. CONSTRUCTION OF CONSTITUTIONAL PROVISIONS.— The provisions of the constitution operate prospectively only, unless a contrary intention clearly appears from the words employed.

*Error to District Court of El Paso County.*

THIS is an agreed case, submitted for decision without suit under chapter 24 of the code. The section permitting the submission reads as follows:

" Parties to a question in difference which might be the subject of a civil action may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court which would have jurisdiction if an action had been brought, but it must appear by affidavit that the controversy is real and the proceedings in good faith to determine the rights of the parties. The court shall thereupon hear and determine the case, and render the judgment thereon as if an action were depending." Sec. 278, Code 1887.

The present controversy has reference to an attempted increase by the city of Colorado Springs of its water supply, such increase becoming necessary on account of the growth of the city; the city being about to purchase from the owners of water-rights for agriculture such rights, to the end that the water may be diverted to the use of the city. The plaintiff, a citizen and tax-payer of the city, and

an owner of a water-right for irrigation purposes upon the Fountain creek hereinafter mentioned, seeks to restrain the city authorities from its contemplated action.

The agreed statement of facts is as follows:

" 1. That the defendant is a municipal corporation, being a city of the second class of this state, and has and maintains a system of water-works for the purpose of furnishing, and through which it furnishes, its inhabitants with water.

" 2. That the plaintiff is a citizen and tax-payer of the city of Colorado Springs, and an owner of a water-right for irrigation purposes upon the Fountain creek hereinafter mentioned that is prior in right to any appropriation of water made by the defendant, and which is impaired by the defendant's appropriations of water.

" 3. That heretofore, in the year 1878, defendant constructed a pipe line and reservoir and supplied and still supplies them with water from Ruxton creek, above the town of Manitou, and that in the year 1889, to supply the increased wants of its inhabitants, defendant greatly enlarged the capacity of said pipe line, reservoir and water-works system, and to supply them now requires about —— million gallons of water daily, and exceeding the flow of water in said Ruxton creek; that the waters of the Ruxton and the Fountain creek flow together in the town of Manitou, and that the waters of said creeks at their junction are naturally of about equal volume. That said Ruxton creek is about five miles in length and is fed and formed by a number of streams coming together above the place of intake of defendant's pipe line, all of which is substantially shown by the map herewith filed.

" 4. That defendant has, for the purpose of supplying its said water-works, the first priority of water-rights upon said Ruxton creek, but that there are upon the Fountain creek, below the point where said Ruxton creek and Fountain creeks flow together, a great number of water-rights for irrigation and ranch purposes, prior to defendant's right upon said Ruxton creek, sufficient to take all the waters

of Fountain creek after receiving the waters of Ruxton creek.

" 5. That defendant takes and will continue to take, for its use, substantially all of the waters of Ruxton creek, so that no waters of Ruxton creek will reach the Fountain creek.

" 6. That, in addition to the said pipe line, said defendant is the owner of a certain ditch or canal, known as the El Paso County canal, which takes water directly from the said Fountain creek for the use of its inhabitants.

" 7. That defendant requires both the said pipe line and the said ditch to furnish the necessary supply of water for the use of its inhabitants.

" 8. That the water taken from Ruxton creek aforesaid through defendant's pipe line is continuously used by its inhabitants, through its hydrants, for culinary, drinking, general household purposes, sprinkling lawns and streets, in business houses, livery-stables, etc., while the water taken through said ditch or canal is used by defendant to irrigate lawns, parks, trees upon its streets, small gardens, truck patches, etc., continuously from April to October of each year.

" 9. That the defendant's said ditch was by the district court of El Paso county in the year 1882, in the adjudication of the priorities of water-rights of water district No. 10, adjudicated to be No. 32, and said original pipe line was then in like manner adjudicated to be No. 1 on Ruxton creek, and that there are thirty-one appropriations of water upon said Fountain creek that are prior to the defendant's said ditch, which are of capacities sufficient in times of scarcity to take all of the waters of said creek for agricultural purposes; so that in order that defendant have the use of water when it needs it, it must to a great extent interfere with said appropriations that are prior to its ditch and pipe lines, and including the said water-rights to plaintiff.

" 10. That the defendant has continuously, including the

months from April to October of each year, since the year 1871 to the present year, taken from the waters of said Fountain creek, through its said El Paso County canal, water to the capacity of said canal, and also has taken continuously through its said original pipe line of the water of said Ruxton creek continuously since the year 1878, waters to the full capacity of said original pipe line, claiming it had a right so to do, and though the plaintiff and other prior appropriators of waters of said Fountain creek have been, to a greater or less degree, for and during each of said periods, injuriously affected thereby, they have failed to object thereto and to assert any prior rights of appropriation he or they had to the water so taken by the defendant, yet said persons, including the plaintiff, now claim damages therefor of the defendant, and the full amount of their respective original appropriations, without diminution of the amounts so taken and appropriated by the defendant, which defendant will pay to them unless enjoined by this court.

" 11. That many of the persons holding priorities upon said Fountain creek over the defendant, and who are injuriously affected by defendant's said appropriation of water, do not take, and never have taken, through their respective canals or ditches, water to the amount decreed to them in and by the decree aforesaid, because either that their said ditches are not of sufficient capacity to carry such decreed appropriation, or that sufficient water has not been contained in the said creek to supply the amounts so decreed, or that such person has not had under cultivation sufficient land to receive such decreed amount of water; yet, nevertheless, such persons demand of the defendant damages upon the full decreed amount of their respective appropriations, and, unless restrained by this honorable court, the defendant will settle their damages upon such basis.

" 12. That the defendant has been negotiating for and is about to purchase some of the water-rights for agricultural irrigation purposes that are prior to the defendant's ditch

and pipe line, with the view of taking the water belonging to such prior water-rights through its said ditch and pipe line for the use of its inhabitants.

"13. That defendant is about to negotiate for such of said water-rights as are prior to its pipe line and its ditch, under and pursuant to subdivision 73 of section 3312 of the General Statutes, upon the basis that such priorities as it so settles for, either by consent or condemnation, deprives such prior appropriator of all his right, title, claim and priority in and to the waters of said Fountain creek, and by such settlement defendant will pay to such prior appropriators sums of money greatly in excess of what it would pay by settling with such prior appropriators, upon the basis that by such settlement or condemnation the said rights remain intact, subject only to diminution to the extent of defendant's uses."

Plaintiff prays that defendant be enjoined from purchasing water-rights from said Fountain creek, etc., and for general relief. The court below upon a final hearing denied the relief sought by the plaintiff and entered judgment accordingly.

Mr. T. A. McMorris, for plaintiff in error.

Mr. William Harrison, for defendant in error.

Mr. Justice Hayt delivered the opinion of the court.

The points upon which a decision is asked as given upon the oral argument may be stated as follows:

1. Are the rights of a junior appropriator of water from a tributary stream subject to the rights of a prior appropriator from the main stream below?

2. Can the priority of a farmer to the use of water for agricultural purposes be transferred by sale to a city for city purposes so that it may succeed to the rights of the original appropriator?

3. To the extent the use made by the city is purely for

domestic purposes, has it the right, without compensation, to take waters theretofore appropriated for agricultural purposes?

That an affirmative answer must be given to the first of the above questions seems obvious. A negative answer would wipe out the doctrine of priorities upon which our elaborate system is based — a system generally recognized as among the best yet devised, and upon which vast property rights have been built.

The fundamental principle of this system is that priority in point of time gives superiority of right among appropriators for like beneficial purposes. To now say that an appropriator from the main stream is subject to subsequent appropriation from its tributaries would be the overthrow of the entire doctrine. All large streams are dependent upon tributaries for a supply of water. To cut off the water from such tributaries would be to destroy the capacity of the stream to the injury of those below. It would result in ruinous and useless expenditures of money in a race between rival claimants in the extension of ditches towards the source of water supply, and reward success at the expense of the rights of prior appropriators.

But counsel say: "The waters of the Ruxton lose their identity upon reaching the Fountain. For all purposes to the appropriator, below the point of confluence, Ruxton creek does not exist; it cannot be identified. That being so, how can it be said by the appropriator upon the Fountain creek that the appropriator upon Ruxton creek has taken his water?" It is shown by the stipulation that Ruxton creek is fed and formed by a number of streams coming together above the place of intake of defendant's pipe line. Now, if plaintiff in error be correct, and the appropriator of water from a stream be held to have no claim upon the water of the tributaries of that stream, then defendant's water supply is liable to be cut off by settlers above at any time—a conclusion so manifestly unjust that it must be discarded. It is not a question of identity, as

counsel seem to suppose, but one of supply. It is of no consequence to the appropriator below whether the water supplied to him comes from Ruxton creek or from some other tributary to the Fountain; this is entirely immaterial so long as his supply is adequate. When it is lessened by junior appropriators to his injury, he has cause to complain, no matter whether the diminution results from such appropriators taking the water direct from the Fountain, or from some of its tributaries before it reaches the main stream.

2. Upon the next proposition plaintiff in error insists that a water-right cannot be transferred by sale separate from the land. The question thus raised is one of first impression in this court. Its importance is apparent. In *Fuller v. Swan River Mining Co.*, 12 Colo. 12, a nearer approach was made to its consideration than in any other decided case. It was there held that one who has the right by appropriation to divert the waters of a stream may change the place of diversion and also the place of use. This disposes of plaintiff's contention that the water is only appropriated for a particular tract of land and that the appropriation will not hold for any other; for although the decision is based upon diversion for mining purposes, no reason is perceived why the rule in reference to appropriations for agricultural uses should not be the same, the requirement in all cases being that the water diverted from the stream shall be applied to a beneficial use.

After reviewing the authorities the court said: "It seems to be well settled by these decisions that a prior appropriator of water from a stream may change the point of diversion and the place of use without affecting his right of priority, and all the cases reviewed, except the case of *Davis v. Gale*, 32 Cal. 27, makes the right to make such change dependent upon the condition that the change shall not injuriously affect others. We think that the rule announced in *Kidd v. Laird*, 15 Cal. 162, 'that, in the absence of injurious consequences to others, any change which the party chooses to make is legal and proper,' is the only rule

which under the rights of the prior appropriator can be fully exercised, and his rights, and the rights of all other persons fully protected.  The right to change, so limited, includes the point of diversion, and place and character of use."

The rule as thus stated seems to be fair to all parties concerned.  If A. is the owner of one hundred and sixty acres of land with a water-right for only eighty acres, it may be of great benefit to him to change the place of use as the soil upon a portion of the tract becomes exhausted or impoverished by the raising of crops.  To deny the right to change the place of use under such circumstances would result in injury to the prior appropriator with no corresponding benefit to others.  The wisdom of the rule in *Fuller v. The Swan River Company* is apparent when applied in such a case.  And no reason is perceived why, if the place of use may be changed to a tract adjoining the one in connection with which the priority came into existence, it may not as well be changed to a piece of land at a greater distance.  The principle permitting the first change to be made being established, the exercise of the right cannot be made to depend upon the locus of the use, provided the rights of others are not injuriously affected by the change.  The authority for changing the place of use from one part of a quarter section of land to another place upon the same quarter section will permit the purchase of land elsewhere and utilizing the water in its cultivation.  Thus if the owner of land near Ruxton creek with a water-right therefor may purchase land further away from the source of water supply, say at Colorado Springs, and utilize his appropriation for such land, in turn he may sell and convey this land with such water-rights as he may have therefor.  And there is nothing to prevent the said city from purchasing both and thereafter changing the place of use the same as any other appropriator.  But why force the city to buy the land if it only needs the water?

An examination of the case in 12 Colo. will show the con-

clusion there announced to be well supported upon principle and authority.  And it being thereby established that the place of use may be changed, it logically follows that the right to the use of the water for irrigation is a right not so inseparately connected with the land that it may not be separated therefrom.  The right has been treated and held as a property right in numerous cases.  In *Kidd v. Laird*, 15 Cal. 161, it is said: "The court has never departed from the doctrine that running water, so long as it continues to flow in its natural course, is not and cannot be made the subject of private ownership.  A right may be acquired to its use which will be regarded and protected as property, but it has been distinctly declared in such cases that the right carries with it no specific property in the water itself." Mr Gould in his work on water-rights, at section 234 says, " The right to water acquired by priority is the subject of property and may be sold and conveyed.  *  *  *"

" The exclusive right to divert and use the water of a stream, as well as the ditch or other structure through which the diversion is effected, may be transferred and conveyed like other property or rights analogous to property." Pomeroy on Riparian Rights, par. 58.

The authorities seem to concur in the conclusion that the priority to the use of water is a property right.  To limit its transfer as contended by appellee would in many instances destroy much of its value.  It may happen that the soil for which the original appropriation was made has been washed away and lost to the owner, as the result of a freshet or otherwise.  To say under such circumstances that he could not sell the water-right to be used upon other land would be to deprive him of all benefits from such right.  We grant that the water itself is the property of the public; its use, however, is subject to appropriation, and in this case it is conceded that the owner has the paramount right to such use.  In our opinion this right may be transferred by sale so long as the rights of others, as in this case, are not injuriously affected thereby.  If the pri-

ority to the use of water for agricultural purposes is a right of property, then the right to sell it is as essential and sacred as the right to possess and use. Blackstone says: " The third absolute right inherent in every Englishman is that of property, which consists in the free use, enjoyment and disposal of all his acquisitions without any control or diminution save only by the laws of the land." Blackstone, book 1, p. 138.

'What difference can it make to others whether the owner of the priority in this case uses it upon his own land or sells it to others to be used upon other lands? There is no claim of waste occurring between the present points of diversion and the place where the city is to take the water. Where a material waste results from the change, a new feature is introduced which need not be considered here. In chapter 5 of Angell on Water-courses, a number of instances are cited where at common law water-rights were declared to be the subject of sale, and although with us such rights are acquired by appropriation rather than by grant or prescription, as at common law, this certainly cannot affect the right of alienation. In *Hurd v. Curtis*, 7 Met. 94, several owners of mill privileges had apportioned the water among themselves by 'a written agreement. By the terms of this instrument one W., the owner of a fulling-mill, was entitled to a certain portion of the water for the use of his mill " or for other machinery requiring equal power," and it was held that the water-right was not inseparably connected with the building or site at which the water was then used, but that it might be used elsewhere.

In *De Witt v. Harvey et al.*, 4 Gray, 486, a deed had been given of land bordering on a canal supplying mills, " with the privilege of crossing to and from and around the same, and of erecting and using tenter bars in some convenient place near the same, with the privilege also of drawing water from said canal at all times when it may be done without injury to the said mills, sufficient for the purpose of a fulling-mill and shearing machine, but for no other

purposes whatever." And it was held that the right to use the water for a fulling-mill and shearing machine is not made apparent to the land grant, and also that such right was not extinguished by the dam being subsequently taken down by the owners of water-power at that spot and rebuilt in such a manner as to overflow the land granted by the deed; the court being of opinion that the rights of water were not appurtenant to the particular parcel of land granted, but that the owner might use the water at any place or in any manner so long as the rights of others were not thereby impaired. When, therefore, the land became submerged, it was held that the right of the owner to use the water at any other mill, or upon any other parcel of land situated on the same dam, should be sustained.

There is no controversy in the present case in reference to the mode and manner in which the right to the water may be conveyed, the contention extending further back, the claim being that the right cannot be conveyed at all, except with the land. The claim is not well founded. As we have seen, the right is the subject of property and may be transferred accordingly, the sole limitation being that the rights of others shall not be injuriously affected by such transfer.

3. Has the city the right to take the water without compensation? This right is claimed under section 6 of article 16 of our constitution. The section relied upon and the preceding section read as follows:

"Sec. 5. The water of every natural stream not *heretofore appropriated*, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, *subject to appropriation as hereinafter provided*.

"Sec. 6. The right to divert the *unappropriated* waters of any natural stream to beneficial uses shall never be denied.

"Priority of appropriation *shall* give the better right as between those using the water for the same purpose; but

when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes."

As the rights desired by the city accrued prior to the adoption of these constitutional provisions, a well-understood rule of construction, applicable alike to constitutions and statutes, exempts this case from the operation of the constitution in this respect. That instrument operates prospectively only, unless a contrary intention clearly appears from the words employed. Cooley's Const. Limitations, secs. 62, 63. No such intention appears in the provision quoted; in fact the use of the words "not heretofore appropriated," in section 5, and "unappropriated waters," in section 6, clearly indicate an intention to limit the application of these provisions to the future. If, as urged by plaintiff in error, these provisions were intended to confer upon cities, towns or individuals the right to take without compensation, for domestic use, water appropriated for agricultural and other purposes before its adoption, they would fall under the ban of the fourteenth amendment to the federal constitution, which provides that no person shall be "deprived of life, liberty or property without due process of law." As we have already seen, a priority to the use of water is a property right.

The construction contended for would also bring the provisions quoted from the state constitution in conflict with several other provisions of that instrument, notably section 3 of the Bill of Rights, in which it is declared, " That all persons have certain rights, among which may be reckoned that of acquiring, possessing and protecting property;" and section 15, which provides that "private property shall not be taken or damaged for public or private use without just compensation;" and section 25, which contains the same

language as that just quoted from the national constitution. And for this reason it should be rejected, it being equally open to a construction that will at once harmonize and make effective the entire provisions of the instrument in relation to the subject. Our conclusion, therefore, is that the constitutional provisions relied upon were not intended to affect, and do not affect, prior vested rights, but that all owners of such rights are entitled to compensation therefor before the same can be taken or injuriously affected. This is in accordance with the express terms of the statute under which the city is attempting to acquire a supply of water, as the same was enacted at the first session of the legislature convened after the adoption of the constitution.

" They shall have the right and privilege of taking water in sufficient quantity, for the purpose hereinbefore mentioned, from any stream, creek, gulch or spring in the state; *provided*, that if the taking of water in such quantity shall materially interfere with or impair the vested rights of any person or persons or corporation heretofore acquired, residing upon such creek, gulch or stream, or doing any milling or manufacturing business thereon, they shall first obtain the consent of such person or persons or corporation, or acquire the right of domain, by condemnation, as prescribed by the constitution and laws upon the subject, and make full compensation or satisfaction for all the damages thereby occasioned to such person or persons or corporation." Sec. 73, Gen. Stat. 1883, p. 974.

The statute is instructive as a contemporaneous legislative interpretation of the constitution, aside from the argument to be based upon the fact of the city being purely a creature of statute, and can therefore only exercise the powers conferred in the manner provided by the legislative department.

From anything that we have predicated upon the fact that the water-rights desired by the city antedate the adoption of our constitution, we are not to be understood as intimating that, if the contrary had been the fact, the

rule requiring compensation to be made when such rights are taken for a higher use would be different. The determination of this question is not involved in this case.

The right of a tax-payer to bring an action of this nature has not been raised or considered; for, accepting the agreement of counsel, that he may do so, we are of the opinion, for the reasons given, that the facts relied upon do not constitute a cause of action. The judgment of the district court denying relief must therefore be affirmed.

*Affirmed.*