[No. 3639.]

THE PLATTE VALLEY IRRIGATION CO. v. THE BUCKERS IRRIGATION, MILLING AND IMPROVEMENT CO. ET AL.

1. WATER RIGHTS—PERCOLATION—PRESUMPTION.

Where water flowing in a natural channel reaches the banks of a stream and there disappears in the sands of the bed, it will be presumed that it augments the flow of water in the main stream by percolation, until the contrary is shown; and the burden of proof is on the party diverting such water, to show that it does not mingle with the water of the stream.

2. WATER RIGHTS—TRIBUTARIES—INCREASED FLOW.

Where a party by his own efforts and expenditures has increased the flow of water in a tributary to a stream, he is entitled to the use of the water to the extent of the increase, but he is not entitled to ap-

propriate the original flow as against prior appropriators from the main stream.

3. WATER RIGHTS—PRIOR APPROPRIATIONS—TRIBUTARIES.

The rights of a prior appropriator from a stream cannot be impaired by a subsequent appropriation of water from its tributaries, and this doctrine applies where the tributary enters the main stream below the point where the prior appropriator makes his diversion. If the result of the appropriation from the tributary is to require the prior appropriator to surrender the use of water for the benefit of senior appropriations below the point where such tributary joins the main stream, then such prior appropriator may require the junior appropriator from the tributary to first surrender the use of water, before such prior appropriator is required to surrender his use, and may maintain an action for that purpose.

4. WATER RIGHTS—DIVERSION BY PERCOLATION.

An appropriator of water from a stream who is required to permit sufficient water to flow by his head-gate to supply senior appropriations below, may maintain an action to abate a subsequent ditch, below his, constructed in such a manner as to depth, grade and proximity to the stream as to withdraw from the stream by percolation part of the water after it has passed his head-gate. GABBERT, J., dissenting.

*Error to the District Court of Weld County.*

THE Platte Valley Irrigation Company is the owner of Evans Ditch No. 2, taking water from the South Platte river; the Buckers Irrigation, Milling and Improvement Company owns a ditch, known as the Buckers, which draws its supply from the same source, below the point of diversion by the Evans. Below the head-gate of the Buckers is located the intake of the Farmers' Independent Ditch, drawing its supply from the same source. By adjudication proceedings, the priorities of these ditches have been relatively determined as follows: Farmers' Independent, first; Evans, second; Buckers, third. When there is a scarcity of water in the river, there is not sufficient to supply each of these priorities. Persons interested in the Buckers ditch organized the Beaver Lake Irrigation, Milling and Improvement Company, for the purpose of constructing seepage and supply ditches, to augment the water supply for the Buckers, and have constructed the Beaver Lake ditch, which intersects the Buckers about 650

feet below the head-gate of the latter; and thence extends up the river, following its line and contour for one and a half miles or more, in close proximity to the channel, and on such grade that for a considerable distance, the bottom of the ditch is below the deep water channel of the stream. The character of the soil between the ditch and channel is such, that a large volume of water percolates from the river into the ditch, and is thence discharged into the Buckers. The Beaver Lake ditch, also, intercepts the flow of water from a stream having its source in Beaver Lake. The terminus of this ditch is at a point several miles below the head-gate of the Evans, but has no head-gate in the river, or any means whereby the water commissioner can know or measure the water drawn from the river into the ditch, nor is there any means by which he can regulate or control the water so withdrawn. The appropriation of this ditch is junior to that of all the others above named. The water commissioner, in times of scarcity of water in the river, closes down the head-gate of the Evans, so that the volume passing by this point, after depletion by the Beaver Lake ditch, or the amount withdrawn or withheld from the river thereby, may be sufficient to supply the priority of the Farmers' Independent ditch.

The Platte Valley Irrigation Company commenced its action against the Buckers Irrigation, Milling and Improvement Company and the Beaver Lake Irrigation, Milling and Improvement Company, to have the Beaver lake ditch abated, and in the complaint alleged the above facts, and further averred that the stream from Beaver lake was a tributary of the river. Defendants answered the complaint, and denied that the portion of the Beaver Lake ditch, known as Feeder No. 1, and the extension thereof, which is that part above the point where it intercepts the flow from Beaver lake, diverted any of the water of the river by percolation or otherwise; denied that the stream discharged into its ditch from Beaver lake was a tributary of the river; and alleged, that the water thus obtained resulted from improvements and drainage of lands adjacent to the lake. To this answer a replication was filed.

On the issues thus formulated, the court found that the portion of Beaver lake ditch, known as Feeder No. 1, and its extension were so constructed with reference to the proximity and grade of the river, that thereby a considerable volume of water was withdrawn from the stream by percolation, and that the outlet from Beaver lake was a natural water course, through which a quantity of water found its way to the bank of the river, where it disappeared in the sands of the river bed; that defendants, by their efforts and expenditures, had drained lands adjacent to the lake, thereby increasing the water supply coming from that source, and decreed that the branch of the ditch, known as Feeder No. 1, and its extension, be abated; and that defendants in error were entitled to the use of all water flowing through the stream from the lake. The plaintiff brings the case here on error, and maintains that the court erred in allowing defendants all the water of the stream from Beaver lake. For cross-error, defendants maintain that the complaint does not state a cause of action; and that the court erred in finding that the outlet from Beaver lake is a natural stream, or water course. Such reference to the evidence as may be necessary will be found in the opinion. The parties to the action sustain the same relation in this court they did below, and, for convenience, will be referred to as plaintiff and defendants.

Mr. JAMES W. McCREERY and Mr. CHARLES D. TODD, for plaintiff in error.

Mr. JOSEPH W. TAYLOR, Mr. CHARLES D. HAYT and Mr. THOMAS MACON, for appellees.

Mr. A. P. RITTENHOUSE, of counsel.

MR. JUSTICE GABBERT delivered the opinion of the court.

The water diverted by defendants through the Beaver lake ditch and its feeders cannot be utilized by the plaintiff

through the Evans, and the latter cannot maintain this action
unless from the established facts it appears it has a right to
the waters of the stream of which it is being deprived by the
defendants, or that the ditches which it seeks to have abated
are in some manner interfering with or depriving it of rights
which it would otherwise enjoy, as an appropriator from the
river, or require it to surrender rights to the use of water
which it should not, for the purpose of supplying the priority
of the Farmers' Independent ditch.   The established facts
present two propositions for the consideration of this court:
*First*, the right of the plaintiff to complain of the diversion
by percolation through Feeder No. 1 and its extension; *second*,
its right to maintain an action, or to relief for the diversion
of the water flowing from Beaver lake.   Whether a cause of
action has been established by the facts may be best deter-
mined by ascertaining if there be a subject matter of con-
troversy between the parties for either or both of such
diversions.   Every action, however complicated or simple,
must embrace the following essential elements, namely, a
right possessed by the plaintiff, and an invasion or denial
thereof by the defendant.   Pomeroy's Remedies and Reme-
dial Rights, § 453.

The questions presented on account of the diversion of
the stream from Beaver lake will be first considered.   The
trial court found that the outlet to this lake was a natural
stream.   This finding is fully sustained by the evidence.   It
also determined that through this stream a quantity of water
always found its way to the bank of the South Platte river,
" where, at certain seasons of the year, and during certain
years, it has disappeared in the sands of the river bed."   The
evidence on the subject as to whether this stream flowed di-
rectly into the main river through a surface channel was con-
flicting, and the finding of the court on this subject cannot
be disturbed.   The court further found that the flow of this
stream had been increased by the efforts and expenditures of
the defendants, and awarded them the right to the use of all
the water thereof, including that which was wont to flow

down the channel prior to the improvements made by the defendants. To what extent such flow was increased is not indicated, but there was evidence to support the finding of the court in this respect. If not a tributary of the river, the plaintiff could have no possible interest in the water flowing in this stream; but does the evidence establish that it is not a tributary of the stream, from which plaintiff diverts its water? There was no evidence tending to prove that its waters, after disappearance in the sands of the river bed, did or did not, by percolation, or subterranean channels, find their way to the main stream. Those acquainted with the arid region know that some of the most important and well-defined streams become almost, and sometimes entirely, dry during a portion of the year, and that there is at all times what is known as the underflow. Kinney on Irrigation, § 44. This is the subterranean volume of water which slowly finds its way through the sand and gravel constituting the beds of the streams which traverse the country adjacent to the mountains of this section, and to which rights by appropriation may attach. Ibid.; *McClelland v. Hurdle*, 3 Colo. App. 430. With these physical conditions present, it will be presumed that water flowing in a natural channel, which reaches the banks of a stream and there disappears in the sands of the bed, augments the flow in the main stream by percolation, until the contrary is shown, and the burden of proof is on the party diverting such water to establish that it does not mingle with the main waters of the stream. It therefore follows, from the findings of the court, and the evidence upon which they were based, with reference to the stream from Beaver lake, that to the extent of its original and natural flow, it was a tributary of the river, and while the defendants were entitled to the use of the water of this stream to the extent that by their efforts and expenditures they had increased its average, continuous flow, they would not be entitled to the original flow as against the plaintiff, if there is any right regarding such water between the parties to this action, which may be settled and adjusted in this proceeding. The defendants

claim the original flow of this stream. The rights of the Farmers' Independent ditch to the waters of the river below where this stream joins it, are senior to the rights of either of the parties to this action. In times of scarcity it becomes necessary for the parties to this suit to surrender their rights to the waters of the stream in favor of the Farmers' Independent ditch. Such surrender must be made in the inverse order of their appropriations. The water from Beaver lake cannot be utilized by the plaintiff by direct diversion into its ditch, but being required to surrender when necessary its rights to the waters of the main stream in favor of the Farmers' Independent ditch it has a right to demand that appropriations junior to it, below the point of intake of its ditch, shall surrender their rights to the waters of the stream in favor of the Farmers' Independent ditch before it does. The rights of a prior appropriator from a stream cannot be impaired by subsequent appropriations of water from its tributaries, *Strickler v. City of Colorado Springs*, 16 Colo. 61; and this doctrine is applicable to the subsequent appropriation of water from a tributary which enters the main stream below the point where the prior appropriator makes his diversion when the result of such appropriation from the tributary is to require the prior appropriator to surrender the right to additional water for the purpose of supplying appropriations senior to his below the point where such tributary joins the main stream ; and, therefore, to the extent that the defendants are diverting the original flow of the stream from Beaver lake, they should be required, when the water of the stream is insufficient to supply the priorities of the Farmers' Independent, Evans and Buckers ditches, to surrender their rights in this diversion in favor of the plaintiff, so that the volume of water passing by the head-gate of the Evans, for the purpose of supplying the Farmers' Independent ditch, would be diminished in volume the same that it would be augmented by the original, natural flow of the stream from Beaver lake, thereby increasing the volume which could be turned into the Evans ditch. Such being the interest which

the plaintiff has in the original flow of the stream from Beaver lake, it follows that on this branch of the case a cause of action in its favor was established by the facts, and the court erred in awarding the defendants the use of all the waters of the stream from the lake, without any limitation whatever.

On the question of the right of plaintiff to maintain an action, or to relief on account of the diversion by the defendants, through that portion of their ditch known as Feeder No. 1, and its extension, the opinion of the majority of the court is, that such action can be maintained, and that plaintiff was entitled to the relief granted by the trial court. With this view the writer of this opinion does not concur, for the following reasons: Upon this branch of the case, plaintiff seeks to maintain its action, upon the theory that when there is a scarcity of water in the natural channel of the river, there is not sufficient to supply the priorities of the Farmers' Independent and Evans ditches after depletion by the wrongful withdrawal of a portion thereof through Feeder No. 1 and its extension; and because these structures are withdrawing water from the stream at a point below the intake of the Evans, the commissioner, in order to supply the priority of the Farmers' Independent ditch, is obliged to permit a sufficient volume to flow past the head-gate of the Evans, which, after depletion by defendants' ditches, will still leave sufficient to supply the Farmers' Independent ditch. This is not the duty of the commissioner, nor is it the law. In times of security, he is required to divide the waters of the streams in his district among the ditches taking water therefrom according to the prior rights of each respectively. 1 Mills' Ann. Stats. sec. 2384. In times of scarcity of water in the stream at the point of diversion by the Evans, when water is needed by this ditch, he should permit only such volume to pass by the head-gate of the Evans, when augmented by the flow of tributaries further down, after depletion by the diversion of water therefrom by priorities senior to those of plaintiff, as will be sufficient to supply established

priorities in advance of plaintiff below the point where such tributaries join the main stream.   That the whole or part of this volume may be diverted by the defendants, which will result in depriving the Farmers' Independent ditch of a sufficient supply, are not conditions he can take into account in regulating the flow into the Evans.   The Farmers' Independent ditch may complain of such diversion, but the plaintiff cannot.

If the commissioner will do his duty, as defined by the law, the plaintiff will have no cause to complain as against the defendant companies, nor can the latter complain as against the commissioner, for the one simple reason, they are making no claim to the waters of the stream through these branches of their ditch, nor was it charged in the complaint they did.   That the water which it would be the duty of the commissioner to cause to flow by the head-gate of the Evans, when necessary for the use of the Farmers' Independent ditch, in obedience to the law of gravitation, passes down the stream, and is wrongfully diverted by the defendants, as against the rights of the owners of this ditch, is no concern of plaintiff; it has no right in the water thus withdrawn. These structures of the defendants do not cause the waters of the stream to pass by the head-gate of the Evans at any time, and, therefore, no rights to the use of such waters by plaintiff are denied, or invaded by the defendants' maintaining these branches of their ditch.   True, by means thereof, the Farmers' Independent ditch may be deprived of water to which it is justly entitled, but plaintiff is under no obligation to, nor can it protect, the rights of this ditch as against the wrongful acts of the defendants.   These are rights in which it has no interest; rights which the owners of the Farmers' Independent ditch may never assert; and, therefore, the abatement of Feeder No. 1 and its extension, or their destruction by decree, so directing, would be at the instance of one who is in no manner injured thereby, or who would be benefited by such judgment.   In the opinion of the writer, the judgment of the trial court on this branch of the case

was erroneous; but the opinion of the majority of this court being otherwise, the judgment of the district court, directing that defendants' ditches, described as Feeder No. 1 and its extension, be abated, is affirmed, from which judgment the writer dissents.

On the other branch of the case, relative to the diversion by defendants, of the water of the stream flowing from Beaver lake, the judgment is reversed for further proceedings in relation thereto, in accordance with the views herein expressed thereon.

### ON PETITIONS FOR REHEARING.

PER CURIAM. Plaintiff in error asks for a rehearing, or modification, of the opinion, because, from the language employed, it appears parties would have the right to enter the channels of natural streams, and interfere with the flow of water therein by changing the form of the channel, so as to make it narrower or deeper, and thereby increase the apparent flow of water, and thus acquire a right to such apparent additional flow; and also urge that the language of the opinion is susceptible of the construction, that obstructions may be placed in tributaries, and the discharge thereof into the main stream thereby prevented, and the burden thrown upon a prior appropriator of procuring the water to be turned into the main stream, as well as showing how much, so retained, should be turned in; and also suggests the opinion indicates that the water contained in the gravel in the bed of the stream does not constitute a part of the natural flow of the stream.

It was not intended to so hold, and in our judgment, the opinion is not susceptible of the construction that it does.

Counsel for defendants in error request that in case their application for rehearing is denied, a clause be added to the opinion, permitting the defendants to show to the district court that, by reason of physical changes in the river bed, which have occurred since the former trial, that the portion of the decree affirmed will be unjust and oppressive. As the

record now stands, it would be improper for this court to issue any directions to the lower upon this subject. This particular question, raised by the defendants in error, is not before us for consideration. Any application for a modification of the decree must be addressed to the district court. Petitions for rehearing denied.

*Petitions denied.*