## WYOMING *v.* COLORADO.

No. 10, original.   Argued February 11, 12, 1936.—Decided June 1, 1936.

*Mr. Ray E. Lee,* Attorney General of Wyoming, and *Mr. James A. Greenwood,* with whom *Mr. Wm. C. Snow* was on the brief, for plaintiff.

*Messrs. Shrader P. Howell, William R. Kelly,* and *C. D. Todd,* with whom *Mr. Paul P. Prosser,* Attorney General of Colorado, and *Messrs. Lawrence R. Temple* and *William A. Bryans, III,* were on the brief, for defendant.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

By this suit the State of Wyoming complains of the State of Colorado and asserts that the latter and her water claimants have been and are departing from a decree rendered by this Court in an earlier suit between these States (259 U. S. 419, 496; 260 U. S. 1), and that the asserted departures have been and are working material injury to Wyoming and her water claimants. The principal relief sought is an injunction enforcing adherence to that decree.

The earlier suit and decree dealt with the relative rights of the two States and their respective water claimants to divert and use for irrigation the waters of the Laramie River, an innavigable stream which has its source in the mountains of northern Colorado, flows northerly 27 miles in that State, crosses into Wyoming, and there flows northeasterly 150 miles to the North Platte River, of which it is an affluent. That suit was largely provoked by a proposed and threatened diversion in Colorado (called the Laramie-Poudre Tunnel Project) of 50,000 acre feet or more from the Laramie River, which Wyoming alleged would not leave in the river sufficient water to satisfy older appropriations in that State.

Shortly after the present suit was begun the complainant's right to relief was challenged by a motion to dismiss, one ground of which was that the suit proceeds on the erroneous assumption that the earlier decree determined, as against Colorado and her water claimants, the full quantity of water which rightly may be diverted

within that Sate from the stream, and likewise the quantity which Wyoming and her water claimants are entitled to receive and use within her borders. The motion was overruled (286 U. S. 494), the scope of the ruling and the reasons for it being shown in the following excerpts from the opinion then delivered.

"We are of opinion that the record, opinion and decree in the prior suit, here reviewed at length, show very plainly that the decree must be taken as determining the relative rights of the two States, including their respective citizens, to divert and use the waters of the Laramie and its tributaries. These rights were put in issue by the pleadings, displayed in the evidence, and considered and resolved in the opinion. Not only so, but the question of priority in time and right as between the appropriations in Colorado and those in Wyoming was directly presented by the pleadings and evidence and distinctly dealt with and resolved in the opinion.

"As appears from the opinion, the Court held that the doctrine, long recognized and enforced in both States, whereby priority of appropriation gives superiority of right, furnished the only equitable and right basis on which to determine the controversy between them shown in the pleadings and evidence.

"And as further appears from the opinion, the Court made specific findings showing the amount of water in the available supply, its insufficiency to satisfy all asserted appropriations, the date when the proposed tunnel appropriation in Colorado was initiated, the names and amounts of the appropriations in Colorado which were senior to that appropriation, the amount of water included in the Wyoming appropriations which were senior to it, and the amount which would remain in the supply and be subject to that appropriation after deducting what was required to satisfy the senior appropriations in both States.

"These findings were pertinent to the issues, and upon them the Court pronounced its decree. Under a familiar rule the facts thus determined are not open to dispute in a subsequent suit between the same States."

And again:

"Construing the decree in the light of the record and opinion, to which counsel for both States appeal, we think it was intended to and does define and limit the quantity of water which Colorado and her appropriators may divert from the interstate stream and its tributaries and thus withhold from Wyoming and her appropriators.

"But it is said that water claims other than the tunnel appropriation could not be, and were not, affected by the decree, because the claimants were not parties to the suit or represented therein. In this the nature of the suit is misconceived. It was one between States, each acting as a quasi-sovereign and representative of the interests and rights of her people in a controversy with the other . . . the water claimants in Colorado, and those in Wyoming, were represented by their respective States and are bound by the decree."

The earlier decree, so construed, confirms and establishes "the right of the State of Colorado, or of any one recognized by her as duly entitled thereto," to divert and take within that State:

(1) 18,000 acre feet of water per annum from the Laramie River and its tributaries in virtue of the Skyline Ditch appropriation;

(2) 4,250 acre feet of water per annum from such stream and its tributaries in virtue of certain meadowland appropriations;

(3) The relatively small amount of water appropriated prior to 1902 from the headwaters of Deadman Creek, a tributary of the Laramie River, through the Wilson Supply Ditch;

(4) 15,500 acre feet of water per annum from the Laramie River and its tributaries, in virtue of the Laramie-Poudre Tunnel appropriation;

and that decree also confirms and establishes the right of the State of Wyoming and her water claimants to receive and divert within that State the remaining waters of the stream and its tributaries in virtue of appropriations prior in time and right to the tunnel appropriation in Colorado. A further provision in the decree enjoins the defendant State from diverting or taking from the river and its tributaries in virtue of the tunnel appropriation any water in excess of the confirmed right to 15,500 acre feet per annum, the reason for limiting the injunction to that appropriation being that there was no showing of an exigency requiring that it be broader.

In this view of the earlier suit and decree, we further held, in overruling the motion to dismiss the present suit, that the bill contains allegations of such material departures by Colorado and her water claimants from the earlier decree that she should be called upon to answer. Colorado did answer; evidence was then taken and reported by commissioners; and the cause has since been submitted on briefs and oral argument.

The departures from the decree which are charged against Colorado in the bill are of two classes—one comprising diversions under claims not confirmed or recognized in the decree, and the other consisting of diversions under each of the confirmed Colorado claims of more water than the decree accredits to the claim. In the answer Colorado denies that certain of the diversions have been excessive or otherwise contrary to the decree, and admits that other designated diversions have not been in accord with the decree as construed in our opinion overruling the motion to dismiss, but asserts that they have been made in good faith and in accord with what the State's officers have understood the decree to be.

One complaint is of diversions through what are de-
scribed in the bill and answer as Bob Creek ditch, Bob
Creek extension ditch, Columbine ditch, and Lost Lake
Reservoir system. These diversions are admitted in the
answer. They are made, not under claims recognized or
confirmed in the decree, but quite independently of it.
Under the decree, as is pointed out in our opinion over-
ruling the motion to dismiss, the Colorado claims which
the decree recognizes and confirms are the only ones in
virtue of which diversions may be made as against Wy-
oming and her appropriators. Claims not so recognized
and confirmed are excluded. It follows that the diver-
sions just described contravene the decree and infringe
Wyoming's rights under it. They were being practiced
when the present suit was begun and for a time there-
after, but when the motion to dismiss was overruled they
were discontinued pending further action by us. Counsel
for Colorado now assure us in their brief that the State
does not propose to permit a resumption of these diver-
sions if we hold as we now do, that they contravene the
decree. Because of this assurance, which we accept, there
is no present need for granting an injunction in respect
of these diversions.

Another complaint is of the diversion of water through
the Wilson Supply ditch from the headwaters of Dead-
man Creek, a tributary of the Laramie. The substance
of the complaint is (a) that there has been no appropria-
tion under which this diversion may be made, and (b)
that, even if there has been such an appropriation, the
Wilson Supply ditch recently has been enlarged and is
now made the means of diverting more water from the
headwaters of Deadman Creek than was included in the
appropriation. Neither phase of the complaint is tenable.
The decree in the earlier suit (260 U. S. 1), distinctly
recognizes and confirms the existence of an appropriation
enabling "the State of Colorado, or anyone recognized by

her as duly entitled thereto," to divert and take from the headwaters of Deadman Creek "the relatively small amount of water appropriated therefrom prior to the year 1902 by and through what is designated in the evidence as the Wilson Supply ditch." Wyoming is bound by this finding and adjudication. While the appropriation is there described as including a "relatively small amount of water" the record in that suit, to which the decree refers, shows that the appropriation is of 2,000 acre feet of water per annum—a relatively small amount when contrasted with the other appropriations of 18,000 and 4,250 acre feet which the decree recognizes in its next preceding parts. The decree is to be taken as if the exact amount of this appropriation were written into it.

While the evidence bearing on the alleged enlargement of the Wilson Supply ditch is conflicting, we are persuaded by it that what was done was more in the nature of repair than of enlargement. But this is not very material; for the evidence convinces us that the water diverted from the headwaters of Deadman Creek through the ditch has not been in excess of 2,000 acre feet per annum, the amount of the recognized appropriation.

It is well to state with some emphasis that what we have just said relates to the appropriation through the Wilson Supply ditch from the headwaters of Deadman Creek. The need for this statement arises out of the fact that other water which forms no part of this appropriation, but is part of the natural flow of Sand Creek, is carried by the same ditch from Sand Creek to Sheep Creek. Sand Creek lies between Deadman Creek and Sheep Creek and for a part of its length is used as a section of the Wilson Supply ditch. We are not here concerned with the diversion or appropriation of the water naturally flowing in Sand Creek.

It is further complained that the diversions made under the meadowland appropriations which are recognized and confirmed in the decree are excessive, in that, while the decree fixes the amount of these appropriations at 4,250 acre feet per annum, the actual diversions thereunder have ranged from 36,000 to 62,000 acre feet per year. In the answer Colorado does not deny that waters greatly in excess of the amount fixed in the decree are taken from the stream into ditches leading to the meadowlands where it is to be applied, but asserts that after the water is applied the greater part of it returns to the stream through surface drainage and percolation and that the part actually consumed does not exceed the amount fixed in the decree.

It is apparent from the opinion in the earlier suit that 4,250 acre feet was fixed as the measure of these appropriations because the water is appropriated for the irrigation of 4,250 acres of native-hay meadows and one acre foot per acre is deemed sufficient for that purpose when the water is rightly and not wastefully applied.

The evidence shows that the water is being applied to the native-hay meadows by a process of continuous flooding whereby 10 or more acre feet are put on each acre during the irrigating season of 50 or 60 days. That this is a distinctly wasteful process is obvious. It is true that when water is so applied a considerable portion ultimately finds its way back into the stream unless the place of application be remote from the stream or in another watershed, which is not the case in this instance. But it is also true that a material percentage of the water is lost by evaporation and other natural processes and that there is no way of determining with even approximate certainty how much of the water returns to the stream.

Colorado insists that the decree, in fixing the measure of these meadowland appropriations, refers to the

amount of water consumptively used and not to the amount taken from the stream into the ditches leading to the place of use. The thing dealt with by the decree is described therein as the right "to divert and take" from the stream and its tributaries a designated amount of water. We think these words refer to the water taken from the stream at the point of diversion, and not to the variable and uncertain part of it that is consumptively used.

As it is plainly shown that diversions are being made under these meadowland appropriations in quantities largely in excess of the amount fixed in the decree, we think an injunction should issue forbidding further departures from the decree in this regard.

Another complaint is that the diversions under the Skyline ditch appropriation and those under the Laramie-Poudre tunnel appropriation have been and are in excess of the quantities accredited to them by the decree. In the answer Colorado admits the charge in respect of the Skyline ditch appropriation; denies that the diversions under the Laramie-Poudre tunnel appropriation have been in excess of the quantity accredited to it; and asserts that, with the possible exception of the year 1929, the total diversions under the recognized Colorado appropriations have been at all times within the aggregate of the quantities accredited to them severally, and that, consistently with the decree, she lawfully may permit diversions under any of the recognized appropriations in excess of its accredited quantity so long as the total diversions under all do not exceed the aggregate of the quantities accredited to them severally. It is a necessary conclusion from the answer that all of the actual diversions have been made with Colorado's permission express or implied.

The evidence respecting diversions under the Skyline ditch appropriation and under the tunnel appropriation

is conflicting; and this is true of the evidence respecting the total diversions under the recognized Colorado appropriations. After considering all of it, and such admissions as are made in the answer, we reach the conclusion that the diversions under the Skyline ditch appropriation have exceeded the quantity named in the decree, the excess ranging from 1,000 to 5,000 acre feet per year; that the diversions under the tunnel appropriation have closely approached, but have not exceeded, the quantity fixed in the decree; that the total diversions under the recognized Colorado appropriations, including those for the meadowlands, have uniformly exceeded the aggregate of the quantities which the decree accredits to them severally; and that, if the appropriations and the diversions for the meadowlands be put aside, the total diversions under the other appropriations have at times closely approached, but at no time have exceeded, the aggregate of the quantities accredited to them as distinct appropriations.

We already have dealt with the excessive diversions under the meadowland appropriations and have said that an injunction will be granted forbidding any further departure from the decree in that regard. That injunction will eliminate the excess in those diversions; and when that is done the total diversions under the several appropriations will be, as has just been pointed out, within the aggregate of the quantities which are accredited to them severally by the earlier decree—and this notwithstanding the diversions under the Skyline ditch appropriations are in excess of the quantity accredited to it.

We therefore must consider the contention made by Colorado that, consistently with the decree, she lawfully may permit diversions under any of the recognized appropriations in excess of its accredited quantity, so long as the total diversions under all do not exceed the aggregate of the quantities accredited to them severally.

In both Colorado and Wyoming water rights acquired by appropriation are transferable, in whole or in part, either permanently or temporarily; and the use of the water may be changed from the irrigation of one tract to the irrigation of another, if the change does not injure other appropriators.[1] The rules in this regard are but incidental to the doctrine of appropriation. That doctrine prevails in both States and the decree in the earlier suit was based on it. It was not the purpose of that suit or of the decree to withdraw water claims dealt with therein from the operation of local laws relating to their transfer or to restrict their utilization in ways not affecting the rights of one State and her claimants as against the other State and her claimants.

We perceive no reason for thinking that it is in any wise material to Wyoming and her water claimants whether the water in question is diverted and conveyed to the place of use through the Skyline ditch, the Wilson Supply ditch or the ditches of the Laramie-Poudre Tunnel Project. All are trans-mountain ditches and deliver the water in the Cache La Poudre Valley, which is in another watershed.

The diversions through the trans-mountain ditches in the quantities here shown are made with the consent of the owners of the water rights and with the full sanction of Colorado. Therefore as respects the present question the situation is not different from what it would be had the owners of the other claims formally transferred parts of their water rights to the Skyline owners. The appropriations remain as they were when the decree was entered and are still limited to the quantities which it

---

[1] *Sieber* v. *Frink*, 7 Colo. 148, 154; 2 Pac. 901; *Strickler* v. *Colorado Springs*, 16 Colo. 61, 68, *et seq.;* 26 Pac. 313; *Frank* v. *Hicks*, 4 Wyo. 502, 523; 35 Pac. 475, 1025; *McPhail* v. *Forney*, 4 Wyo. 556, 560; 35 Pac. 773; *Johnston* v. *Little Horse Creek Irrigating Co.*, 13 Wyo. 208, 225, *et seq.;* 79 Pac. 22.

accredits to them. But the Skyline owners are now permitted by the owners of the other claims and by Colorado to take and use part of the waters included in those claims. Wyoming and her claimants are in no way injured by this. No departure from the decree is involved. The thing which the decree recognizes and confirms is "the right of the State of Colorado, *or of any one recognized by her as duly entitled thereto,* . . . to divert and take" the water included in the designated appropriations.

We are accordingly of opinion that in the circumstances here shown the Skyline ditch diversions do not constitute an infraction of the decree.

In the brief for Wyoming we are asked to adjudicate the relative rights of the two States and of their respective citizens to divert and use the waters of Sand Creek, a small interstate stream, which is not a tributary of the Laramie. (259 U. S. 490.) The bill contains no showing in respect of these rights, there is no prayer in it for their adjudication, and they are not relevant to the controversy which it presents. We therefore must decline to consider them at this time.

In the bill it is complained that Colorado, although requested so to do, has refused to permit Wyoming to install measuring devices at the places of diversion for the purpose of ascertaining the amount of water being diverted in Colorado from the river and its tributaries, and there is a prayer for a decretal order permitting such installation. The evidence bearing on this matter hardly can be regarded as establishing the propriety of such an order, and yet it tends to show a need for improving the means and methods of measuring the diversions, for keeping accurate and complete records thereof, and for according to the representatives of Wyoming full access to both the measuring devices and the records. Recognizing this need, Colorado in her brief assures us that

through her officers she will accord to Wyoming's officers free access to the measuring devices and to the registering charts, records, and other available data, will coöperate freely with them in devising an appropriate plan for measuring the diversions, and will give full consideration to such suggestions as they may make respecting the improvement of the measuring equipment. In this situation the order which is asked would be inappropriate. While the problem of measuring and recording the diversions is a difficult one, we entertain the hope that the two States will by coöperative efforts accomplish a satisfactory solution of it. But we think Wyoming should have leave to apply to us for an appropriate order in the matter if the two States are unable to agree and it is found that there is real need for invoking action by us.

For the reasons given in this opinion we conclude that the only relief to which Wyoming is now entitled is an injunction forbidding further diversions under the meadowland appropriations of more than 4,250 acre feet per year measured at the headgates through which the water is diverted.

Such an injunction will be granted, Wyoming will be given leave to apply later on for an appropriate order respecting the measurement and recording of all diversions in the event the two States are unable to agree and there is need for action by this Court, jurisdiction of the cause will be retained for the purposes of such an application, and the costs will be taxed one-half to each of the two States.

*It is so ordered.*