[Civ. No. 12097.  First Dist., Div. One.  Dec. 28, 1942.]

DAN E. WILLIAMS et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

John J. O'Toole, City Attorney (San Francisco), Dion R. Holm, Assistant City Attorney, and A. E. Chandler for Appellant.

Charles F. Blackstock, Glenn J. Fairbrook and Dennett & Paul for Respondents.

KNIGHT, J.—The defendant, City and County of San Francisco, appeals from a judgment entered after trial on the merits in a suit involving the riparian and appropriative rights to the waters of the Tuolumne River. The appeal is presented on a clerk's transcript.

The complaint contains two counts in which it is alleged that the plaintiffs are the owners of lands riparian to said river. By the first count they seek to quiet their titles thereto and to enjoin the alleged wrongful diversion by the defendant of the waters of said river. By their second count they seek to quiet their alleged titles to the waters of said river as against the defendant. The defendant in its answer denies the essential allegations of the complaint, and it then goes on to allege that it is a municipal corporation, and in the name of the Hetch Hetchy project has operated and used for many years, under the authorization of an act of Congress approved in 1913, called the Raker Act, large quantities of the waters from said river and adjacent streams to supply its inhabitants with waters for domestic purposes and hydro-electric power. In this connection it sets forth in detail the manner in which the water rights were acquired, together with the approximate quantities of water used, and the cost of the construction and maintenance of dams, reservoirs, power houses, works and equipment. It then denies that it has wrongfully diverted or intends to divert any of the waters of the Tuolumne River necessary for beneficial purposes on the lands of the plaintiffs. Furthermore, it alleges that it has acquired title to the waters it has thus diverted by adverse possession; that because of plaintiffs' knowledge of and acquiescence in defendant's appropriation and use of said waters for many years, plaintiffs are estopped from denying defendant's title thereto, and that plaintiffs' action is barred by several provisions of the Code of Civil Procedure and of the San Francisco Charter.

As set forth by the trial court in its decision herein, its conclusions of law from the facts found were: "The defendant, is the owner by prescription of a right, prior and superior to the riparian rights of the Riverside and Fourth of July claims, to divert at Early Intake into its Hetch Hetchy aqueduct 700 cubic feet per second of the waters of Tuolumne River, and to use such waters for power purposes at its Moccasin Power House on Moccasin Creek. That each of the plaintiffs is the owner of the lands described in the findings of fact as belonging to such plaintiff, and that said lands are riparian to the

Tuolumne River, *and that the plaintiffs have and each of them has riparian rights to the flow of the Tuolumne River and its tributaries, superior to any claim of rights by the defendant thereto.* That the plaintiffs are entitled to an interlocutory judgment declaring such rights and reserving jurisdiction in this court to modify said judgment, permitting the use of the waters of the Tuolumne River and its tributaries by the plaintiffs when, upon application and notice by plaintiffs, or any of them, showing is made that they can put said waters to beneficial use." (Italics ours.) The judgment conformed to the foregoing conclusions, and the one above italicized is the basis of the main controversy on this appeal.

The suit was commenced in Tuolumne County in September, 1932. The answer was filed in June, 1933, and on May 9, 1935, on motion of the defendant, the cause was transferred to Merced County. On April 29, 1935, the Supreme Court of the United States rendered a decision in the case of *California Oregon Power Co.* v. *Beaver Portland Cement Co.,* 295 U.S. 142 [55 S.Ct. 725, 79 L.Ed. 1356], involving an interpretation of an act of Congress known as the Desert Land Act of 1877, which decision defendant construed as holding that no public land located or entered after March 3, 1877, the effective date of said act, had a riparian right; that is, defendant contended that by said decision it was held that the effect of said act was to separate riparian rights from the land and that any subsequent grant of government owned land through which flowed a non-navigable stream, did not carry any common law riparian rights, and that any rights to such waters would have to be acquired under the law governing the appropriation of water; and claiming that all parcels of land owned by the plaintiffs herein were acquired by them or their predecessors by patent from the federal government subsequent to March 3, 1877, defendant in 1936 moved for judgment on the pleadings. At the hearing of the motion and in support thereof defendant was permitted to introduce in evidence certified copies of the records showing the dates of entry and patents under which plaintiffs claimed title, all of which, except one (Clio Mill Site), were subsequent to the effective date of the Desert Land Act of 1877. The trial court took judicial notice of those records, and adopting the interpretation contended for by defendant of the decision in the California Oregon Power case, held that plaintiffs had no riparian rights and

gave defendant judgment on the pleadings. Plaintiffs appealed, and the judgment was reversed by the District Court of Appeal of the Third District, with directions to proceed to trial on the issues presented by the pleadings. (*Williams* v. *San Francisco,* 24 Cal.App.2d 630 [76 P.2d 182].) Thereafter a petition to have the appeal heard by the Supreme Court was denied. In thus reversing the judgment the District Court of Appeal expressly rejected defendant's interpretation of the decision rendered in the California Oregon Power case, and construed that decision as holding that the Desert Land Act of 1877 does not withhold or abrogate from conveyances of public lands in arid districts the riparian or other water rights conferred by the provisions of constitutions or statutes of the respective jurisdictions in which the land is situated, but it is implied that the grantee shall take title to the real property and to such water rights incident thereto as may be recognized and conferred by local laws, customs, and judicial decisions of the jurisdictions in which the lands are situated. In this regard the court in summarizing its conclusions said: "It is therefore not true, as the respondent contends, that the appellants in this case possess no water rights incident to their lands merely because their titles were acquired from the government by patents issued subsequent to the adoption of the Desert Land Act. As the Supreme Court has definitely held, they may be entitled to any water rights which have been recognized and fixed 'by the customs, laws and judicial decisions of the state' of California." The District Court of Appeal then goes on to point out that "Riparian rights to the beneficial use of water upon lands in this state adjacent to rivers and streams have been recognized by law and are uniformly upheld by the California courts. (25 Cal.Jur., p. 1060, § 58 et seq.; art. XIV, § 3, Const. of Cal.; *Peabody* v. *City of Vallejo,* 2 Cal.2d 351 [40 P.2d 486]; *City of Los Angeles* v. *Aitken,* 10 Cal.App.2d 460, 472 [52 P.2d 585].)"; although they are now limited to the extent declared by the 1928 amendment to section 3 of article XIV of the state Constitution.

On this appeal the defendant again urges the adoption of its construction of the California Oregon Power decision. In this regard it is argued that for the several reasons set forth in its brief the District Court of Appeal of the Third District has not only misinterpreted the real effect of the decision therein, but has reached its conclusion by unsound reasoning, and that therefore its decision on this point should in effect

be repudiated. Plaintiffs take the position that so far as this main question is concerned the decision rendered on the former appeal became the law of the case, and that therefore the trial court was and this court is concluded thereby. Whether or not that be true, we are in accord with the construction placed by the District Court of Appeal on the decision rendered in the California Oregon Power case, and adopt as our own the following portion thereof:

"In construing the application of the Desert Land Act to water rights of every nature incident to lands which were thereafter conveyed, the Supreme Court said that subject to prior vested water rights acquired by appropriation:

"'As the owner of the public domain, the government possessed the power to dispose of land and water thereon together, or to dispose of them separately. . . . The fair construction of the provision now under review is that Congress intended to establish the rule that for the future the land should be patented separately; and that all non-navigable waters thereon should be reserved for the use of the public *under the laws of the states and territories named. . . .* The only exception made is that in favor of *existing* rights; and the only rule spoken of is that of *appropriation.* It is hard to see how a more definite intention to sever the land and water could be evinced. The terms of the statute, thus construed, must be read into every patent thereafter issued, with the same force as though expressly incorporated therein, with the result that *the grantee will take the legal title to the land conveyed, and such title, and only such title, to the flowing waters thereon as shall be fixed or acknowledged by the customs, laws, and judicial decisions of the state of their location.'*

"It may not be contended that Congress has not delegated and conferred upon the legislatures of the various so-called arid states the power to fix and determine the grantee's water rights incident to land conveyed by the government under the Desert Land Act. In the sentence following the preceding quotation, the court said:

"'If it be conceded that in the absence of federal legislation the state would be powerless to affect the riparian rights of the United States or its grantees, still *the authority of Congress to vest such power in the state, and that it has done so by the legislation to which we have referred, cannot be doubted.'*

"There can be no question from the preceding quoted language of the Supreme Court but that the water rights of a grantee of arid land from the government carries with it the absolute authority of the state in which it is located to fix and determine the extent thereof by appropriate legislation, or by acknowledgment of rules and customs with respect thereto. The court specifically says in that regard:

" *'Nothing we have said is meant to suggest that the act,* as we construe it, *has the effect of curtailing the power of the states affected to legislate in respect of waters and water rights as they deem wise in the public interest.'*

"Finally, to foreclose the possibility of misconstruing the language of the opinion, the court says:

■ " 'What we hold is that following the act of 1877, if not before, all non-navigable waters then a part of the public domain became *publici juris, subject to the plenary control of the designated states,* including those since created out of the territories named, *with the right in each to determine for itself to what extent the rule of appropriation or the common-law rule in respect of riparian rights should obtain.'*

"It is therefore not true, as the respondent contends, that the appellants in this case possess no water rights incident to their lands merely because their titles were acquired from the government by patents issued subsequent to the adoption of the Desert Land Act. As the Supreme Court has definitely held, they may be entitled to any water rights which have been recognized and fixed 'by the customs, laws and judicial decisions of the state' of California."

Some of the criticisms directed against the soundness of the decision of the District Court of Appeal are based upon certain statements made therein concerning the riparian and appropriative water rights of the State of Oregon as they existed prior to and after the adoption of the Oregon Water Code in 1909. It is our conclusion, however, that under the law as laid down by the California Oregon Power case, a grantee of public land acquired since the effective date of the Desert Land Act of 1877 takes title to such water rights incident thereto as may be recognized and conferred by local laws, customs and judicial decisions of the state of their location. ■ And as pointed out, California, by law, judicial decision and custom has recognized riparian rights to the beneficial use of the waters upon lands in this state adjacent to rivers and streams. It would seem to be quite immaterial,

therefore, so far as this case is concerned, what laws or legal doctrines have been followed in the State of Oregon.

Most of the other criticisms are in the nature of arguments advanced in support. of defendant's interpretation of the decision in the California Oregon Power case. But we have found nothing therein to convince us that the construction placed thereon by the decision rendered on the former appeal is unsound.

■ Defendant's second major point is that even assuming that the lands of each plaintiff herein had riparian rights, the power projects proposed to be constructed by them could not rest upon the riparian doctrine, as the plaintiffs as a group do not have continuous ownership or control of all the riparian parcels involved in any one of their several proposed power projects. It will be noted, however, that the portion of the judgment upon which this contention is based is merely declaratory. It reads: "That the plaintiffs have not shown that they can as yet put such riparian rights to a beneficial use and jurisdiction is hereby reserved in this court to modify this judgment permitting the use of the waters of the Tuolumne River and its tributaries by the plaintiffs when upon application and notice by plaintiffs, or any of them, showing is made that they can put such waters to beneficial use.". In other words, the court held merely that plaintiffs as riparian owners were not entitled to any water for power project purposes until a sufficient showing is made to warrant the court in so finding. It is evident, therefore, that for the present at least the defendant is in no way affected by that portion of the judgment.

The judgment is affirmed.

Peters, P. J., and Bray, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1943.