**PEOPLE OF THE STATE OF CALIFOR-NIA v. UNITED STATES.**

No. 12184.

United States Court of Appeals
Ninth Circuit.

Feb. 6, 1950.

Fred N. Howser, Atty. Gen., H. H. Linney, Chief Asst. Atty. Gen., State of Calif., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., San Francisco, Cal., Emmet J. Seawell, Asst. U. S. Atty., Sacramento, Cal., Roger P. Marquis and Fred W. Smith, Atty. Dept. of Justice, Washington, D. C., for appellee.

Before GOODRICH and POPE, Circuit Judges, and HALL, District Judge.

**HALL, District Judge.**

This appeal involves the limited questions arising from the order of the trial court denying the motion of the State of California to intervene under Federal Rules of Civil Procedure, rule 24, 28 U.S.C.A., in a suit where the United States, as plaintiff, seeks to quiet title as against the defendant, Sierra Valley Water Company (a public service corporation of the State of California) to 60 c. f. s. of the Little Truckee River, which arises and flows wholly within the State of California, but which empties into the Truckee River, an interstate stream so far as California and Nevada are concerned.

After denial of motions to dismiss, the Water Company filed its answer and counter-claim, and, by leave of court, a cross-complaint, naming as defendants therein the United States, the Washoe County Irrigation District, alleged to be organized under the laws of the State of Nevada and doing business and owning and holding property in the State of California, and the Sierra Pacific Power Company, alleged to be a Maine corporation, doing business and owning and holding property in the State of California. Thereafter, the State of California filed its motion for leave to intervene, on the ground that the subject matter of the action could not be "adequately protected by the defendant, Sierra Valley Water Company, and, that the proposed intervenor would be adversely affected by a decree awarding plaintiff herein the relief prayed for in its complaint, or any relief." In accordance with the procedural requirements of F.R.C.P. 24(c), the State of California accompanied its motion with a copy of its proposed pleading, designated to be an answer.

The fact that the litigation in the District Court is in its preliminary stages, and that the questions brought here for review are narrowed to a determination of whether or not the State of California may be heard as a party in suit, either as of right or in the exercise of sound judicial discretion, suggests the inadvisability of any extended

statement of the conflicting claims appearing in the limited record[1] before us.

It is necessary, however, to briefly state the contentions of the State and the United States as appears from the pleadings and briefs.

It is asserted that the defendant Water Company, as licensee of the State of California, diverts 60 c. f. s. of water of the Little Truckee River just above its confluence with the Truckee River, and takes the water from the watershed into another watershed (the Sierra Valley) wholly within the State of California, where it is used for irrigation purposes upon the lands of the shareholders of the Water Company and others, and such as remains re-enters the waters of the Feather River system, being wholly within the State of California, for use downstream.

The United States claims ownership[2] and seeks to quiet title to such waters by virtue of prior right, (1) as trustee of the lands and waters of the Pyramid Lake Indian Reservation lying entirely within the State of Nevada, (2) as appropriator of waters in the Truckee River for reclamation of the Newlands Reclamation Project located entirely in the State of Nevada, and, (3) as riparian owner of the waters of the Little Truckee River by virtue of its ownership of public lands for forest or other purposes which lie along and border upon the Little Truckee River in the State of California.

The State of California claims its right to intervene as *parens patriae,* and as prior absolute owner[3] of the water in suit by virtue of its constitution and the laws of the State of California relating to water and water rights which latter were codified in 1943 in what is now known as the Water Code of California, the pertinent provisions of each are set forth in the margin.[4]

---

1. The record on appeal consists only of the complaint of the United States, as amended; the answer, counter-claim and cross-complaint of the defendant Water Company; the motion to intervene of the State of California and its proposed answer, and the response of the United States to the motion of California to intervene.

2. Whether the United States owns or can own water or only the right to use water for beneficial purposes and if it can do so without regard to the laws of the State of California, as well as whether the claim of the United States to the water is in its sovereign capacity or proprietary capacity, or both, are questions which are not necessary to determine. And, in view of the fact that they are or may become questions involved in the merits of the case, it is intended that nothing in this opinion shall be indicative of this court's view thereon.

3. While the State, in its opening brief, disclaimed any effort on its part to seek a decree in its favor in respect to any portion of the waters involved, the whole argument of the State is based upon the constitutional provisions of the State of California, herein elsewhere referred to, and the provisions of the Water Code appropriating all waters in the State of California to the people of the State. For that reason, it must be assumed that the statement appearing in the brief of the State, to the effect that it is not seeking title to the waters, is either a misstatement or not a complete statement of its position. In its reply brief, the position taken by the State consistent with its argument, is stated as follows: "It does claim that it owns the waters within the State and maintains control over them subject to the rights of appropriators under license from it. Such license is subject to forfeiture for non-use, in which event the water rights revert to the State."

4. "Water a public use. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; * * *." (Constitution of California, Article XIV, Section 1 (1879).)

"Conservation of water. It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the

As will be observed, the Constitution of the State of California provides in Art. XIV, Sec. 1, that the use of all water then or thereafter appropriated is a public use subject to regulation and control of the State in the manner provided by law; and, in the same article by Sec. 3, it is declared that because of conditions existing in the State, the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent to which they are capable and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The Water Code provides, among other things (Sec. 102), that "all water within the State is the property of the people of the State," and that a license to use water is "effective for such time as the water actually appropriated under it is used for a useful and beneficial purpose in conformity with this division but no longer." (Sec. 1627)

It is alleged in the answer of the State that the use of the diverted water by the Water Company is for irrigation purposes upon lands of the stockholders of the Water Company (a mutual company), and "after such use it becomes available for and is used upon a large acreage of land in Sierra Valley," which latter acreage belongs to landowners who are not members of the Water Company and cannot be represented by it and are not parties to the action; that the lands of Water Company landowners and of such non-party landowners constitute nearly one-half of the irrigated lands within the applicable Watermaster Service Area set up under the State Water Code; that the State has no other source of water to substitute for the water in suit; that the loss of the water involved would put such an amount of land out of production as to seriously affect a California population of 15,000 people and the economy of two counties of the State of California and their tax structure, as well as the dairying industries and other businesses and establishments located in six towns within the area, the success of which is dependent upon successful agriculture in Sierra Valley, which is basically dependent upon the water in suit. And further; that such loss of water would so seriously affect the State Watermaster service as to make the cost prohibitive to maintain that service for such lands as might be able to obtain any water within the Watermaster area. It is further alleged that after such use by the Water Company and other landowners in Sierra Valley, about 60% of the water in suit enters the headwaters of the Feather River System and is used in that System entirely within the State of California. All these matters are alleged to be of public interest and State concern, and, that it is the right, if not the duty, of the State, under the above-mentioned requirements of the Constitution and laws of the State of California, to protect them in this litigation as they are necessarily involved in any decree which might award the plaintiff the relief asked for in the complaint, or any relief, and, that the Water Company can only assert in court the rights of its shareholders and cannot adequately protect the State's interest in its public welfare as above described. In addition to the foregoing allegations, the State alleged that the real party in interest in the litigation is not the United States, but the Sierra Pacific Power Company[5] whose

people and for the public welfare. * * * " (Constitution of California, Article XIV, Section 3 (1928).)

"Water State property: Acquisition of right to use water by appropriation. All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law." (California Water Code, Division 1, Chapter 1, Section 102.)

"Use of water for useful and beneficial purpose. A license shall be effective for such time as the water actually appropriated under it is used for useful and beneficial purpose in conformity with this division but no longer." (California Water Code, Division 2, Part 2, Section 1627.)

5. It is alleged that Sierra Pacific Power Company, formerly the Truckee River General Electric Company, is a corporation incorporated under the laws of the State of Maine and doing business within the State of California.

interest does not lie in getting the water into Nevada for the Pyramid Indians, nor for the Newlands Reclamation Project, but solely to have the continuous flow of the Little Truckee River over Boca Dam (below the Water Company's diversion on the Little Truckee River) for the purpose of generating electric power for sale in the State of Nevada.

It is contended by the United States that, (1) the order denying intervention is not appealable; (2) the State cannot intervene as of right, and that there was no abuse of discretion in disallowing the intervention; and, (3) the pleading filed by the State in effect is a claim against the Government and the United States has not consented to be sued.

■ The order denying intervention is a final order under Title 28 U.S.C.A. § 1291 (1948), and is appealable. State of Washington v. United States, 9 Cir., 1936, 87 F.2d 421, 431. The only apparent remedy open to the State, if intervention is denied, and if the United States would prevail, would be to then sue the State of Nevada in the Supreme Court of the United States, but by that time the water would be gone and the damage done to the State. For all practical purposes there is no "other appropriate proceeding" open to the intervenor than to assert the rights of the State in the present suit. Thus the order denying intervention is a "final" order, and is appealable.

The contention of the United States that the State of California cannot intervene as a matter of right must be rejected. The State of California is entitled to intervene as of right on each of the claimed grounds, not only in its proprietary capacity as asserted absolute owner of the water in suit, but also in its capacity as *parens patriae*.

■ This is a quiet title suit. Water is property. In California it is regarded as one of the most valuable species of property. The State, by its declaration of ownership, in its Constitution and laws, is in no lesser position than a private individual would be who had a recorded deed to property. A plaintiff seeking to quiet title in such instance could not do so by merely suing a tenant without joining the owner. If such were attempted, the owner would have a right to intervene. So here the State, in this instance, has a right to intervene, where it has declared by law its absolute ownership of the water, and only its licensee is joined as a party.

■ It is difficult to see how the United States could secure a judicial determination of the claims it asserts in the complaint without consideration and determination of the validity of the provisions of the Constitution and Laws of the State of California whereby California undertakes to declare its absolute ownership of waters in the State. To deny the State the right to intervene in this case would be to deny the State the right to defend those provisions of its Constitution and Laws. As stated in Percy Summer Club v. Astle, C. C.N.H.1901, 110 F. 486, 488, "It would be especially unbecoming for the federal courts to pass on a great question in which a sovereign state of the Union has a direct interest, if not as lord paramount, at least as representing all its citizens, without affording it an opportunity to be heard before the legal proceedings in which the question is involved are concluded." In Hudson County Water Co. v. McCarter, 1908, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560, the court had under consideration a statute of New Jersey making it unlawful to transport the waters of New Jersey into any other State. The Court said, 209 U.S. at pages 355–356, 28 S.Ct. at page 531: "But it is recognized that the state, as quasi-sovereign and representative of the interests of the public, has a standing in court to protect the atmosphere, the water, and the forests within its territory, irrespective of the assent or dissent of the private owners of the land most immediately concerned. State of Kansas v. Colorado, 185 U.S. 125, 141, 142, 22 S.Ct. 552, 46 L.Ed. 838, 844, 845, s.c. 206 U.S. 46, 99, 27 S.Ct. 655, 51 L.Ed. 956, 975; State of Georgia v. Tennessee Copper Co., 206 U.S. 230, 238, 27 S.Ct. 618, 51 L.Ed. 1038, 1044 [11 Ann.Cas. 488]. What it may protect by suit in this court from interference in the

name of property outside of the state's jurisdiction, one would think that it could protect by statute from interference in the same name within."

The converse is equally true. If a state may enact a statute, such as California has, it may appear in court and defend that statute. California has an undoubted right to intervene to protect and assert the validity of its enactment on that subject.

The right of the State to intervene as *parens patriae* is equally clear.

Each state primarily depends upon its natural resources for its existence. And, as previously stated, water is regarded as perhaps the most valuable natural resource in California.

■ In suits between different states concerning water the Supreme Court has repeatedly held that the states have a right to appear as *parens patriae* regardless of the rights of individual and private appropriators or users of water.

In State of Kansas v. Colorado, 185 U.S. 125, at page 142, 22 S.Ct. 552, at page 558, 46 L.Ed. 838, the Court, in speaking of its previous ruling in State of Missouri v. Illinois, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497, said: "As will be perceived, the court there ruled that the mere fact that a state had no pecuniary interest in the controversy would not defeat the original jurisdiction of this court, which might be invoked by the state as *parens patriae,* trustee, guardian or representative of all or a considerable portion of its citizens; and that the threatened pollution of the waters of a river flowing between states, under the authority of one of them thereby putting the health and comfort of the citizens of the other in jeopardy, presented a cause of action justiciable under the Constitution."

In State of Wyoming v. Colorado, 1922, 259 U.S. 419, 42 S.Ct. 552, 66 L.Ed. 999, it was contended, among other things, that actually the real parties in interest were the private appropriators of the water. As to that contention, the Court said, 259 U.S. at page 468, 42 S.Ct. at page 558:

"As respects Wyoming, the welfare, prosperity, and happiness of the people of the larger part of the Laramie Valley, as also a large portion of the taxable resources of two counties, are dependent on the appropriations in that state. Thus the interests of the state are indissolubly linked with the rights of the appropriators. To the extent of the appropriation and use of the water in Colorado a like situation exists there."

In State of Kansas v. Colorado, 1907, 206 U.S. 46, at page 99, 27 S.Ct. 655, at page 668, 51 L.Ed. 956, the Court said, in speaking of the status of Kansas in that suit:

"It is not acting directly and solely for the benefit of any individual citizen to protect his riparian rights. Beyond its property rights it has an interest as a state in this large tract of land bordering on the Arkansas river. Its prosperity affects the general welfare of the state. The controversy rises, therefore, above a mere question of local private right and involves a matter of state interest, and must be considered from that standpoint. State of Georgia v. Tennessee Copper Co., 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038 [11 Ann. Cas. 488]."

For similar expressions see: State of Georgia v. Tennessee Copper Co., 1907, 206 U.S. 230-237, 27 S.Ct. 618, 51 L.Ed. 1038, 11 Ann.Cas. 488; Hudson County Water Co. v. McCarter, supra; People of State of New York v. New Jersey, 1921, 256 U.S. 296-301, 41 S.Ct. 492, 65 L.Ed. 937; State of New Jersey v. New York, 1931, 283 U.S. 336, 342, 51 S.Ct. 478, 75 L.Ed. 1104; State of Wyoming v. Colorado, 1936, 298 U.S. 573, 585, 56 S.Ct. 912, 80 L.Ed. 1339; State of Colorado v. Kansas, 1943, 320 U.S. 383, 394, 64 S.Ct. 176, 88 L.Ed. 116.

■ Nevada is not here seeking the water. It is the United States which are seeking it for the purpose of taking it into the State of Nevada. If Nevada were seeking it, could it be doubted that the State of California would be entitled to appear as a party in a suit involving these same rights? And, with the United States seeking to take the water for use in Nevada, which would achieve the same result as if Nevada were seeking it, can it be doubted that the State of California is at least entitled to be heard

as to its rights and claims on behalf of its citizens?

It cannot be overlooked that the Power Company is a party to this suit as a cross-defendant of the Water Company. In view of the allegations contained in the cross-complaint of the Water Company and the State's proposed answer in intervention, the State of California has, as the proper representative of the public welfare, a right to be heard as an intervenor between these two proposed private users of its waters, aside from all other considerations.

The Government's contention that to permit the State to intervene would, of necessity, compel the State of Nevada to seek to intervene and, in event such intervention were allowed, the court would be divested of jurisdiction as it would then be a suit between two states with jurisdiction lying only with the Supreme Court, cannot at this posture of the case be taken into consideration. Whether Nevada could join in the litigation is a question that is not now present. Should it seek to join as an intervenor, it will then be time enough to consider that question.

The Government also makes the contention that this is a suit against the Government and, there being no statute authorizing it, the Court does not have jurisdiction. The short answer to that is that the Government chose the forum in which it is seeking to quiet title to the water. The State is asserting an interest in the subject matter as the absolute owner of the water, and as *parens patriae* on behalf of all its citizens. That is a sufficient interest in the subject matter to entitle it to be heard, just as much as if the State were joined by the United States originally as a defendant. U. S. v. Great Northern R. Co., D.C.Mont.1949, 32 F.Supp. 651, is not in point. The one attempting to intervene there was a private person whose rights are certainly not as great as that of the State as *parens patriae* in the maintenance of the welfare of its citizens. Moreover, in that case on appeal, McDonald v. United States, 119 F.2d 821, this Court did not follow the ruling of the trial court but based its approval of the denial of the right of intervention on the ground that the private intervenor's rights were adequately represented and the point was not touched in the opinion of the Supreme Court in the same case, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836.

The State of California being entitled to intervene as of right, it follows that there was error in denying the application of the State to intervene.

Judgment reversed.

POPE, Circuit Judge, dissenting.

I think that my associates have read something into the record that it does not contain, and that the majority opinion is based upon matters which were never submitted to the trial judge. Neither were they argued by appellant in this court. I think appellant realized that under the California decisions these matters could not aid it.

It is now stated in the court's opinion that "the State of California claims its right to intervene * * * as prior absolute owner of the water in suit * * *" As I read the record, no such claim was presented either here or in the court below. On the contrary, the brief of the State of California frankly states: "So that there may be no question in anyone's mind as to our position on this appeal, we desire to assure the Court that the State is not seeking a decree in its favor in respect to any portion of the waters of the Little Truckee River." The answer which the appellant tendered with its motion for intervention contains no allegations of ownership of any water or water rights. The purpose of the intervention is disclosed by the prayer of the proposed answer which is as follows: "Wherefore, defendants, the People of the State of California, pray that the relief prayed for in plaintiff's complaint herein as amended be denied, and that the rights of defendant Sierra Valley Water Company in and to the waters of the Little Truckee River be declared and determined to be prior and superior to the rights of plaintiff and of any other claimant thereto appearing herein."

Had the trial judge when the application for intervention was presented to him suggested that the State alter its claim and amend its grounds for intervention, there would have been no impropriety in his doing so; but for this court to evolve a new theory for the State which was never presented in the court below or in this court, is not only unfair to the trial judge but beyond our jurisdiction as an appellate court.[1]

The record upon which the trial court acted discloses that the principal action was an ordinary suit brought for the purpose of determining the rights of two adverse claimants to the waters of an interstate stream. It was not substantially different from many such suits which have been brought in the federal courts in this circuit. See reference to such cases in Brooks v. U. S., 9 Cir., 119 F.2d 636, 639.

The attempted intervention of the State was solely in its capacity as *parens patriae*. As above stated, its brief expressly disclaimed any assertion of ownership of any water and its proposed answer sought as its sole object a judgment that the waters in question be awarded to the defendant, Sierra Valley Water Co. That such is the purpose of the intervention is not left in doubt. The appellant's brief states the proposition too clearly to permit argument to the contrary: "Essentially the issue presented by the main case is whether the United States shall be permitted to deprive the defendant water company of the use of some 60 c. f. s. of water during the dry season, in order that said water, or so much of it as is not lost by evaporation and soil-absorption, shall be allowed to reach Boca reservoir and thence be taken to serve the purposes of the United States in various of its reclamation and power-development projects, principally located in Nevada, thereby taking California water from California into Nevada and subjecting the former users of the water to possible economic destruction along with the communities dependent upon

them for substantial support, and adversely affecting the economic stability of the two counties most vitally concerned.

"It is in this aspect of the case that the State of California asserts an interest in the litigation which we sincerely believe entitles the State to intervene in order that there may be presented to the trial Court those perhaps imponderable elements and considerations which the defendant water company is not authorized or empowered to present and which can best be and can only be presented by the State in its capacity as *parens patriae*."

All of the allegations of the proposed answer are directed to this type of intervention. The affirmative portion of the answer alleged that the water taken from the Little Truckee River by defendant Water Company had been transferred to another watershed; that it is used for irrigation purposes only on lands of the stockholders of that company; and that the return flow becomes available for and is used on other land in the Sierra Valley. After alleging that a considerable portion of the State water master service in the area is devoted to distribution of these waters, it proceeds: "In addition to the water master service area consideration, the economy of two counties of the State of California, to-wit, Plumas and Sierra, is involved. The loss of production from this important acreage constituting approximately 14,500 acres within these counties would affect not only agricultural prosperity but many other enterprises deriving income therefrom and would have a considerable effect upon county tax revenues.

"Utilization of the Truckee River stream system, of which the Little Truckee is a tributary, is by natural conditions primarily available for benefit to the State of Nevada. California can utilize but a comparatively small portion of the water produced although a large portion is generated on California watersheds. It seems equitable that a large part of the small portion avail-

---

1. It seems to me that the majority's footnote 3 discloses the process by which they have misinterpreted the State's position. Even if the reply brief mentioned attempted to alter the State's position, which I think it did not, yet that brief was first filed here,—it was never available to the trial judge.

able to beneficial use in California should not now be taken away and dedicated to the State of Nevada.

"The economy of Sierra Valley would be seriously curtailed if the area were deprived of the water imported from the Little Truckee River. Irrigated agriculture on 14,546 acres in the valley would become unsuccessful. This would cause a drop in the valuation of these lands, which in turn would adversely affect the tax structure in the counties of Plumas and Sierra. The dairying industries, stores and other business establishments in the local towns of Loyalton, Sierraville, Satley, Beckwith, Vinton and Chilcoot are in a large measure dependent on successful agriculture in Sierra Valley."

In support of its claimed rights the State principally relies upon such cases as Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 51 L. Ed 956; Wyoming v. Colorado, 259 U.S. 419, 42 S.Ct. 552, 66 L.Ed. 999, and Nebraska v. Wyoming, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815, thereby further characterizing the nature of the right sought to be interposed by the intervention as the State's right to assert claims as *parens patriae.*

An examination of the pleadings of the parties to the original suit, that is to say, the United States, as plaintiff, and the Water Company, as defendant, discloses that this was but an ordinary action in the nature of a suit to quiet title for the purpose of determining as between the United States and the Water Company their respective rights and priorities to the waters of an interstate stream. The United States claimed three separate rights. It asserts appropriations as of July 2, 1902 of certain water from the Truckee River for the purpose of irrigating land within the Newlands Reclamation Project. If the United States acquired such rights it did so pursuant to the requirements of the Reclamation Act in conformity with state laws and it would hold the water rights as trustee for the project land-owners who would be the beneficial owners of such water rights. Nebraska v. Wyoming, 325 U.S. 589, 612–614, 65 S.Ct. 1332; Ickes v. Fox, 300 U.S. 82, 95, 57 S.Ct. 412, 81 L.Ed. 525.

The United States also claims an interest in the waters for the use and benefit of the Pyramid Lake Tribe of Indians. This, it may be assumed, is in reliance upon the doctrine of Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340. By an amendment to its complaint the United States also asserts ownership of certain lands in the Tahoe National Forest in Sierra County, California, riparian to the Little Truckee River, and claims riparian rights in the stream by virtue of its ownership of these lands as riparian proprietor. Some of these lands are alleged to have been acquired by purchase from a California corporation in 1935 and 1938. Presumably its claim of riparian rights in respect to those lands is based upon the doctrine of Lux v. Haggin, 69 Cal. 255, 4 P. 919, 10 P. 674. See Fall River Valley Irr. Dist. v. Mt. Shasta Power Corp., 202 Cal. 56, 259 P. 444, 56 A.L.R. 264; Williams v. City and County of San Francisco, 56 Cal.App.2d 374, 133 P.2d 70, certiorari denied 319 U.S. 771, 63 S.Ct. 1435, 87 L.Ed. 1719. By its answer the defendant Water Company asserted that on or about April 1, 1870, its grantors and predecessors in interest appropriated by means of a dam and ditch 70 c. f. s. of the waters of the Little Truckee River. The answer alleges the application of the waters diverted to a beneficial purpose with reasonable diligence and within a reasonable time and makes the customary allegations to disclose an appropriation under the applicable customs and statutes of the State of California. It thus appears that the original case presented for determination by the district court a simple controversy to be determined in accordance with the priorities of the respective parties. It is to be noted that the rights of the defendant are necessarily based upon its claim of an appropriation, since the waters taken by it are removed from the watershed of the Little Truckee River and carried into the watershed of the Feather River; hence defendant is in no position to claim and does not claim any riparian rights. Neither does it claim, as suggested in the majority opinion, "as licensee of the State of California". If any

such assertion appears anywhere in the record I have not been able to find it.

It is too well settled to require citation of authority that the determination of the issues between the original parties must be made by the court's finding as to their respective priorities. Although the plaintiff is the United States it stands here in no different situation than that of a private appropriator or riparian proprietor; and although an interstate stream is involved, the issue must be determined according to the respective priorities and not otherwise. A long time ago this court said in Bean v. Morris, 159 F. 651, 655: "* * * and the broad principle which underlies the relative rights of appropriators from the same stream is, that whoever is first in time is first in right, and the fact that the stream, the waters of which are appropriated, is interstate and nonnavigable, does not affect the rule." See Bean v. Morris, 221 U.S. 485, 31 S.Ct. 703, 55 L.Ed. 821. The rule there stated has been many times reaffirmed in this court, Brooks v. United States, supra, and in the Supreme Court, Wyoming v. Colorado, 259 U.S. 419, 470, 42 S.Ct. 552, 559, 66 L.Ed. 999.[2]

It is thus perfectly clear that the original controversy as framed by the pleadings between the original parties was one which the district court had jurisdiction to dispose of and which must be determined on the basis of a finding as to the priorities of the respective parties. When those are found and determined all of the rights involved in the suit will fall into place.

But now comes the State of California with its proposed intervention as *parens patriae* and relying upon its right to assume that role as declared in Nebraska v. Wyoming, 325 U.S. 589, 65 S.Ct. 1332, 89 L. Ed. 1815, and a long line of prior decisions of which Wyoming v. Colorado, 259 U.S. 419, 42 S.Ct. 552, 66 L.Ed. 999; Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 51 L. Ed. 956; Missouri v. Illinois, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497, and Wisconsin v. Illinois, 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426, are examples, it seeks to inject into the case the questions involving an equitable apportionment of the waters of this stream system between California and Nevada. It must be admitted that the allegations of the proposed answer are quite appropriate for a complaint based upon the doctrine of Nebraska v. Wyoming, supra, and of the other cases just cited. California calls attention to the economy of its two counties, to its agricultural prosperity, to the effect the loss of water would have upon its county tax revenues, to the adverse effect upon its tax structure, to its dairy industries, stores and other business establishments. It calls attention to the equitable considerations to be adjudicated in a case of that kind and then concludes: "Utilization of the Truckee River stream system, of which the Little Truckee is a tributary, is by natural conditions primarily available for benefit to the State of Nevada. California can utilize but a comparatively small portion of the water produced although a large portion is generated on California watersheds. It seems equitable that a large part of the small portion available to beneficial use in California should not now be taken away and dedicated to the State of Nevada."

For the determination of such issues and questions the State of Nevada would be an indispensable party. Here there is admitted to be present for determination by a court all those problems of equitable allocation and apportionment between states which was the subject of the adjudication

2. "In suits between appropriators from the same stream, but in different states recognizing the doctrine of appropriation, the question whether rights under such appropriations should be judged by the rule of priority has been considered by several courts, state and federal, and has been uniformly answered in the affirmative. (Cases cited.) One of the cases came to this court, and the judgment below was affirmed. Bean v. Morris, 221 U.S. 485, 31 S.Ct. 703, 55 L.Ed. 821. These decisions, although given in suits between individuals, tend strongly to support our conclusion, for they show that by common usage, as also by judicial pronouncement, the rule of priority is regarded in such states as having the same application to a stream flowing from one of them to another that it has to streams wholly within one of them."

in Nebraska v. Wyoming, supra. Such is not a proper task for the United States District Court sitting at Sacramento. When one notes the considerations which must enter into a determination of the kind of issues which the State's answer here tenders, the suggestion that the district court pass upon them becomes even more preposterous. Samples of such considerations were mentioned in Nebraska v. Wyoming, supra, 325 U.S. at page 618, 65 S.Ct. at page 1350, 89 L.Ed. 1815, as follows: "But if an allocation between appropriation states is to be just and equitable, strict adherence to the priority rule may not be possible. For example, the economy of a region may have been established on the basis of junior appropriations. So far as possible those established uses should be protected though strict application of the priority rule might jeopardize them. Apportionment calls for the exercise of an informed judgment on a consideration of many factors. Priority of appropriation is the guiding principle. But physical and climatic conditions, the consumptive use of water in the several sections of the river, the character and rate of return flows, the extent of established uses, the availability of storage water, the practical effect of wasteful uses on downstream areas, the damage to upstream areas as compared to the benefits to downstream areas if a limitation is imposed on the former—these are all relevant factors. They are merely an illustrative, not an exhaustive catalogue. They indicate the nature of the problem of apportionment and the delicate adjustment of interests which must be made."

In a suit in which those issues are properly raised the priorities of the several appropriators and water users may be disregarded when the larger consideration of the equities of the respective states are considered, and that precise procedure was followed in Nebraska v. Wyoming, supra, where both Colorado and Wyoming were allowed water "out of priority". That this sort of thing is what the appellant here is attempting to accomplish is made further apparent by the fact that appellant's brief quotes at length from those portions of Nebraska v. Wyoming, supra, which approved "out-of-priority" diversions in Colorado and Wyoming.

Under Article 3, Section 2, clause 2, of the Constitution it is stated that the Supreme Court shall have original jurisdiction "in all Cases * * * in which a State shall be Party". Title 28 U.S.C.A. § 1251(a) (1) provides that: "The Supreme Court shall have original and *exclusive* jurisdiction of: (1) All controversies between two or more States". (Emphasis supplied.)

Suppose we follow through on this required intervention and see what is likely to happen when the district court is required to find out whether California or Nevada has the greater over-all equity. Suppose the court should find that although the appropriations of the defendant Water Company are junior in point of time,[3] yet in view of the economic and physical factors mentioned in the State's answer, the court agrees with the State that "it seems equitable that a large part of the small portion available to beneficial use in California should not now be taken away and dedicated to the State of Nevada". Suppose that ten minutes after such a decision is announced the State of Nevada takes its claims to the Supreme Court, where they belong. That it might do so, and that in such original proceedings, the district court's findings would be a complete nullity, seems to me to demonstrate the unsoundness of the majority's position.

The manner in which the majority opinion undertakes to revoke the State's disclaimer and to amend the State's position taken before the lower court and on the argument in this court, as revealed in the third footnote of the court's opinion, suggests to me that the majority of the court must believe that the case for intervention as made by the State in the lower court was insufficient. Otherwise, why does it require this bolstering? But the statutory

3. Of course, if it finds the Water Company's appropriation prior and superior, it will not need to consider the State's claims.

and constitutional provisions of the State of California by which the majority opinion sets such great store, cannot possibly aid the State in this suit, and I am satisfied that the law officers of the State have been well advised not to take the position which the majority opinion now wants to force upon them. The Water Company on whose behalf the State seeks to intervene claims rights by appropriation in 1870. The United States on behalf of the land owners of the Newlands Irrigation Project claims appropriation in 1902. Section 102 of the California Water Code which is quoted in footnote 4 of the majority opinion was enacted in 1943 but the first clause, to the effect that all water within the State is the property of the people of the State, was first enacted in 1911 as an amendment to Section 1410 of the Civil Code. Even if such an *ipse dixit* of the California legislature were (as I shall presently show it is not), an appropriation of waters, it is quite clear that the Attorney General of California had no thought that a 1911 appropriation would be early enough to serve any useful purpose in this litigation. That was pointed out by the Supreme Court of California in Palmer v. Railroad Commissioner, 167 Cal. 163, at page 175, 138 P. 997, at page 1002, wherein, commenting upon this 1911 amendment of Section 1410, the court said: "All the water rights which were in dispute in the case arose and were acquired by and under appropriations made long before the passage of the amendment aforesaid. It ought not to be necessary to remind any one that a law of this character is not retroactive, or that it cannot operate to divest rights already vested at the time it was enacted." [4]

In my opinion the State was much better advised than to attempt to rely upon any such section, and as I have heretofore pointed out, it did not undertake to do so. If the Water Company succeeds in proving its 1870 appropriation or a valid appropriation of earlier priority than any rights which the United States can establish, neither the Water Company nor the State of California will have anything to worry about. But what must concern the State of California is the possibility that on the trial of this case the court might find that the priorities are with the plaintiff; and in that eventuality, the State must resort, as its answer undertakes to do, to an effort to secure for the State an equitable apportionment of the waters of the interstate stream in its capacity as *parens patriae* and in pursuance of the doctrine of Nebraska v. Wyoming, supra, and the other decisions which that case follows. I can find no fault with the statement of the State's claim made in its answer except that it has presented it to a court which has no jurisdiction to entertain it and it is attempting to enter the wrong forum.

There is nothing novel or unusual about the California statutory declaration that the waters of the State belong to the people. All of the western states containing arid lands have long been water conscious and have made similar declarations, but no one has ever before suggested that such declarations, either in the constitution or the statutes of the state, constituted an appropriation.[5] Thus, the Constitution of the State of Colorado which was a defendant in Nebraska v. Wyoming, supra, provided (Art. 16, sec. 5): "The water of every natural stream, not heretofore appropriat-

---

4. In City of San Bernardino v. City of Riverside, 186 Cal. 7, 198 P. 784, the Supreme Court of California pointed out that the net effect of this statutory declaration was exactly nothing.

5. In California-Oregon Power Company v. Beaver Portland Cement Company, 295 U.S. 142, 55 S.Ct. 725, 728, 79 L.Ed. 1356, it was settled that the Desert Land Act of 1877, Ch. 107, 19 Stat. 377, see 43 U.S.C.A. § 321, in providing that the then remaining unappropriated waters of non-navigable streams "shall remain and

be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights", permitted the continued acquisition of riparian rights in states recognizing such rights. See Williams v. City and County of San Francisco, supra. It would be an interesting question, which is not for decision before us, whether under the Desert Land Act it would be possible for a state to make an "appropriation and use" of waters by merely passing a statute.

ed, within the State of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." In like manner, the Constitution of Wyoming, the other defendant in that case, provided (Art. 8, sec. 1): "The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state." If such constitutional provisions operated, as the majority would now suggest, to vest those States with title to the waters or rights to water of the interstate streams there involved, it is passing strange that the Supreme Court in listing with great care and particularity the relative priorities of the water rights involved, wholly disregarded these Constitutional provisions. The reason it did disregard them is that such enactments have always been held to be mere general declarations that the waters within the state shall be available for acquisition by the people in accordance with local laws. Such a statutory declaration has no more force or effect as basis for the establishment of property rights than the somewhat similar statutory declaration that wild animals and birds are the property of the people of the state.[6]

6. The meaning attached to these constitutional declarations is stated in Kinney on Irrigation and Water Rights, 2nd Ed., Sec. 387, as follows: "The effect of the dedication of the waters of a State to the State or to the people confers no ownership of title in the running waters flowing within such respective jurisdictions. Neither the United States, a State, nor an individual can, under the law, acquire any absolute ownership or title to the waters flowing in their natural channels. As has been discussed in previous sections, the only right that can be acquired by any one is usufructuary. Again, such a dedication confers upon the State no absolute title or right even to the use of such waters. The public ownership if any distinction is made, is rather that of sovereign than that of a proprietor. Therefore, such a declaration confers upon the State the power of administration or regulation of the waters flowing within its boundaries, and also the power of regulating the appropriation and use of such waters as between the respective individual claimants thereto. In other words, the State acts under these terms of dedication in its sovereign capacity only, and not as proprietor or owner of the water. As was said in a leading Wyoming case upon the subject: 'The obvious meaning and effect of the expression that the water is the property of the public is that it is the property of the people as a whole. Whatever title, therefore, is held in and to such water resides in the sovereign as the representative of the people. The public ownership, if any distinction is material, is rather that of sovereign than proprietor. * * * That ownership, however, is subject to a particular trust or use, specially defined in the statutes and in the constitution.' "

Willey v. Decker, 11 Wyo. 496, 73 P. 210, 221, 100 Am.St.Rep. 939. And see Wiel, Water Rights in the Western States, 3d Ed., Secs. 170–172.

Cf. Walbridge v. Robinson, 22 Idaho 236, 125 P. 812, 814, 43 L.R.A.,N.S., 240: "This is not, however, an interest or title in the proprietary sense, but rather in the sovereign capacity as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected and that no one shall be denied his proper use and benefit of this common necessity."

As pointed out by Kinney, and by Wiel, these constitutional and statutory declarations of state or public ownership were adopted in very early days in those states which sought to reserve to the state the power to set up a system of appropriation, and to get away from claims either of federal title or of riparian rights. When the Supreme Court of California made its historic decision in Lux v. Haggin, 69 Cal. 255, 4 P. 919, 10 P. 674, it did so by declaring the supremacy of the title in the United States as a riparian proprietor. From that moment began strenuous efforts to overcome the effects of that decision, see Fall River Valley Irr. Dist. v. Mt. Shasta Power Corp., supra, and the 1911 amendment of section 1410 of the Civil Code was no doubt a final effort in that direction. Its futility was pointed out in Palmer v. Railroad Commissioner, supra, and in City of San Bernardino v. City of Riverside, supra, note 4. The unimpaired persistence of the rule of Lux v. Haggin, supra, is demonstrated by Fall River Valley Irr. Dist. v. Mt. Shasta Power Corp., supra, decided in 1927. The courts of the State did not even choose to take the way out afforded by the Desert Land Act,

It has long been a basic rule relating to intervention that "it is limited to the field of litigation open to the original parties. * * * Introduction by intervention of issues outside those that properly may arise between the original parties complicates the suit and is liable to impose upon plaintiff a burden having no relation to the field of litigation opened by his bill." Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 58, 56 S.Ct. 6, 8, 80 L.Ed. 39. Cf. Columbia Gas & Electric Corp. v. American Fuel & Power Co., 322 U.S. 379, 383, 64 S.Ct. 1068, 1071, 88 L.Ed. 1137: "As an intervener the United States was limited to the field of litigation open to the original parties."

A *fortiori*, that rule should apply here. For here the only issue tendered by the proposed intervention relates to issues foreign to those between the original parties,[7] and which primarily concern the States of California and Nevada. None of these issues are "those that properly may arise between the original parties", and the issue tendered is, for the reasons I have stated, one within the exclusive jurisdiction of the Supreme Court.

The cases cited in the opinion, I think are not in point. In both State of Washington v. United States, 9 Cir., 87 F.2d 421, and Percy Summer Club v. Astle, C.C., 110 F. 486, the State claimed title in itself. This, as I have shown, the appellant here expressly disclaimed.

In Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560, the court merely affirmed the courts in New Jersey in holding that the Attorney General of that State might enforce in the state courts a statute of that State prohibiting the transportation of the waters of a purely intra-state stream outside the State. The sole question was the validity of the statute which the court upheld. It has no bearing upon the questions before us.

I think there is a second reason why the appellant should not prevail here. That is that its claimed intervention does not fall within that portion of Rule 24, R.C.P. relating to "Intervention of Right". If this be an application for "permissive intervention" it has often been said that an order denying such a motion is not appealable. Ex parte Cutting, 1876, 94 U.S. 14, 24 L.Ed. 49; Credits Commutation Co. v. United States, 1900, 177 U.S. 311, 20 S.Ct. 636, 44 L.Ed. 782; Ex parte Leaf Tobacco Board of Trade, 1911, 222 U.S. 578, 581, 32 S.Ct. 833, 56 L.Ed. 323; In re Engelhard & Sons Co., 1914, 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416; City of New York v. Consolidated Gas Co., 1920, 253 U.S. 219, 40 S. Ct. 511, 64 L.Ed. 870; New York City v. New York Tel. Co., 1923, 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673; Palmer v. Guaranty Trust Co. of New York, 2 Cir., 1940, 111 F. 2d 115, 117. Perhaps a better statement of the situation is to say that the order denying the intervention cannot be reversed except for abuse of discretion. See Cameron v. President and Fellows of Harvard College, 1 Cir., 157 F.2d 993.[8]

see Williams v. City and County of San Francisco, supra, as the Oregon Court did in Hough v. Porter, 51 Or. 318, 95 P. 732, 98 P. 1083, 102 P. 728, 731, no doubt because of a proper disinclination to upset established rules of property. It is the continued recognition of the doctrine of riparian rights which makes the California statutory declaration so unimportant.

7. The brief of the State states the object of the intervention to be to present to the trial court "those perhaps imponderable elements and considerations *which the defendant Water Company is not authorized or empowered to present * * *.*" (Emphasis supplied)

The fact that the ditches in Nevada are Government ditches, and the water rights for them are asserted by the United States, makes no difference as to the state versus state character of the controversy. Many of the water rights involved in Nebraska v. Wyoming, supra, were appropriations made by the United States for reclamation projects.

8. It is my view that because the matters are within the exclusive jurisdiction of the Supreme Court, it cannot be said that the State presents a case even of "permissive intervention". But if it were such a case, the time factor would alone be cause for denial. As the matter now stands, I wonder what will happen to the

610

In my opinion appellant has not made a case coming within any of the provisions of Rule 24(a)[9] R.C.P. It cannot come under subdivision (1) for no statute confers the right claimed. It cannot come within subdivision (2) for the State cannot be bound in respect to any right now claimed by it by any judgment in the action. No matter what the outcome between the original parties may be, whenever the State of California decides to take its case to the proper forum it will be as free to do so as was the State of Nebraska in Nebraska v. Wyoming, supra, where the court determined the respective equities of the States involved wholly unhandicapped by any determinations or adjudications previously made in litigation between the various water right holders. The State cannot come within subdivision (3) for it is not so situated as to be adversely affected by distribution or other disposition of the property in the custody or subject to the control or disposition of the court. If it can be said that the right to use 60 c. f. s. of water, which is the thing which the action concerns, is subject to the control or disposition of the court, it cannot be said that the water or the use of it will be dissipated or otherwise lost through any judgment the court might enter between the original parties. See Palmer v. Guaranty Trust Co., 2 Cir., 111 F.2d 115. The statement in the opinion "but by that time the water would be gone and the damage done to the State" seems to me to be manifestly absurd. As long as rain and snow fall the rivers will continue to flow.

The State claims no interest in or lien, equitable, legal or otherwise, upon the water right involved in the suit. By the prayer of its proposed answer as well as by the answer itself and the admissions

made in the brief it states that the right to the use of the water is the exclusive right and property of the Water Company. It is therefore without the interest necessary in order to claim an absolute right of intervention for the reasons stated in Radford Iron Co. v. Appalachian Power Co., 4 Cir., 62 F.2d 940, and in Board of Com'rs of Sweetwater County v. Bernardin, 10 Cir., 74 F.2d 809. See Moore's Federal Practice, 1st Ed. pp. 2339-2346.

I think that the order of the district court was right and should be affirmed.

rest of the court's business while it hears the economic data and agricultural and industrial statistics assembled by the Chambers of Commerce on both sides of the State line.

9. "Rule 24(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."